KENTUCKY OAKS MALL COMPANY, APPELLANT, *v.* MITCHELL'S FORMAL WEAR, INC., APPELLEE.

[Cite as Kentucky Oaks Mall Co. *v.* Mitchell's Formal Wear, Inc. (1990), 53 Ohio St. 3d 73.]

(No. 89-1337—Submitted June 6, 1990—Decided August 8, 1990.)

*David A. Fantauzzi* and *Daniel P. Daniluk,* for appellant.

*Fleck, Mostov & Schwartz, Jeffrey B. Fleck, Mary DeGenaro, Harmon,*

*Smith & Bridges* and *Archer D. Smith III,* for appellee.

DOUGLAS, J. Pursuant to Civ. R. 12(B)(2), Mitchell's moved to dismiss appellant's complaint for lack of personal jurisdiction. The trial court, on that basis, dismissed the complaint and the court of appeals affirmed. Thus, we must first decide whether Mitchell's conduct falls within Ohio's "long-arm statute" or applicable civil rule, and if the statute or civil rule confers personal jurisdiction, then we must determine whether granting jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Fallang* v. *Hickey* (1988), 40 Ohio St. 3d 106, 532 N.E. 2d 117.

I

In this appeal, personal jurisdiction over a nonresident defendant is governed by R.C. 2307.382, which states in relevant part:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) *Transacting any business in this state*;

"* * *

"(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." (Emphasis added.)

Likewise, the applicable civil rule is Civ. R. 4.3(A)(1), which authorizes out-of-state service of process on a defendant who is "* * * [t]ransacting any business in this state[.]" Mitchell's argues that, pursuant to Section 5(B),

Article IV of the Ohio Constitution,[1] Civ. R. 4.3(A)(1) supersedes R.C. 2307.382(A)(1). We disagree and find that the statute and civil rule are consistent and in fact complement each other. R.C. 2307.382(A)(1) authorizes a court to exercise personal jurisdiction over a nonresident defendant, whereas Civ. R. 4.3(A)(1) provides for service of process to effectuate that jurisdiction. Both require that the nonresident defendant be "transacting any business" in Ohio.

Appellant asserts that the negotiations prior to the signing of the lease, and the subsequent duties and obligations created by the agreement, are sufficient to establish that Mitchell's is transacting business in Ohio. Mitchell's, on the other hand, contends that because the physical location of the leased storeroom is in Kentucky, it is Kentucky, not Ohio, where all business is transacted. We again disagree.

It is clear that R.C. 2307.382(A)(1) and Civ. R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are *transacting any* business in Ohio. "Transact," as defined by Black's Law Dictionary (5 Ed. 1979) 1341, "* * * means to *prosecute negotiations*; to carry on business; *to have dealings* * * *. The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion * * *." (Emphasis added.)

In the case at bar, Mitchell's negotiated the lease by telephone contact to Ohio with an Ohio-based limited

---

[1] Section 5(B), Article IV of the Ohio Constitution states in relevant part: "* * * All laws in conflict with such rules shall be

of no further force or effect after such rules have taken effect."

partnership. Mitchell's intentionally and voluntarily entered into a ten-year contract by signing the document in Georgia and mailing it to Ohio. The document creates ongoing duties and obligations for the life of the contract. Undoubtedly, both parties sought the benefit of each other's bargain in hopes of realizing a pecuniary gain. The fact that Mitchell's maintained no physical presence in Ohio does not preclude a finding that it transacted business in this state.

Thus, we are convinced that Mitchell's conduct falls unequivocally within the plain and broad language of R.C. 2307.382(A)(1) and Civ. R. 4.3(A)(1). Similarly, our finding is reinforced by the fact other courts have passed on this issue reaching the same result, to-wit: that a lease agreement, in certain circumstances, is "transacting business" within the forum state's long-arm statute. See, *e.g.*, *Wright Internatl. Express, Inc.* v. *Roger Dean Chevrolet, Inc.* (S.D. Ohio 1988), 689 F. Supp. 788; *Vena* v. *Western General Agency, Inc.* (N.D. Ill. 1982), 543 F. Supp. 779; *Klippel* v. *Heintz* (1982), 231 Kan. 312, 644 P. 2d 428; *Schanno Transp., Inc.* v. *Smith* (Minn. 1981), 312 N.W. 2d 114; *SD Leasing, Inc.* v. *Al Spain & Assoc., Inc.* (1982), 277 Ark. 178, 640 S.W. 2d 451.

Accordingly, we hold that a commercial nonresident lessee, for purposes of personal jurisdiction, is "transacting any business" within the plain and common meaning of the phrase, where the lessee negotiates, and through the course of dealing becomes obligated, to make payments to its lessor in Ohio.

## II

Once having decided that the conduct of Mitchell's falls within the purview of R.C. 2307.382(A)(1) and Civ. R. 4.3(A)(1), the question becomes whether the assertion of personal jurisdiction by an Ohio court over Mitchell's comports with the Due Process Clause of the Fourteenth Amendment.

Over forty years ago, in *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310, the court announced that a state may assert personal jurisdiction over a nonresident defendant if the nonresident has "* * * certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (Citation omitted.) *Id.* at 316. Since 1945, the court, on numerous occasions, has elected to address the Due Process Clause as it pertains to personal jurisdiction over a nonresident defendant. In particular, for purposes of this appeal, we turn our attention to *Burger King Corp.* v. *Rudzewicz* (1985), 471 U.S. 462, which involved a contract dispute substantially similar to the issue presented before us today.

In *Burger King,* Rudzewicz, a franchisee residing in Michigan, was sued in Florida by Burger King, a Florida-based corporation, for breach of contract and trademark infringement. The contract was negotiated with both the Florida-based headquarters of Burger King and its Michigan district office. The twenty-year lease provided that the relationship would be governed by Florida law and it required that all monthly fees and relevant notices be sent to the Florida headquarters. The court ruled that the assertion of jurisdiction did not offend due process and stated:

"* * * Rudzewicz established a substantial and continuing relationship with Burger King's Miami headquarters, received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida, and has failed to demonstrate how jurisdiction in that

forum would otherwise be fundamentally unfair * * *." *Id.* at 487.

Justice Brennan, in writing for the majority of the court, reviewed prior cases and concluded that "* * * the constitutional touchstone remains whether the defendant *purposefully* established 'minimum contacts' in the forum State. *International Shoe Co.* v. *Washington, supra,* at 316." (Emphasis added.) *Id.* at 474. The nonresident defendant has purposefully established minimum contacts "* * * where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State * * * where the defendant 'deliberately' has engaged in significant activities within a State * * * or has created '*continuing obligations*' between himself and residents of the forum * * * he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well." (Citations omitted and emphasis added in part.) *Id.* at 475-476. Furthermore, minimum contacts are satisfied when the defendant foreseeably causes injury in the forum state if " '* * * the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' * * *'" *Id.* at 474 (quoting *World-Wide Volkswagen Corp.* v. *Woodson* [1980], 444 U.S. 286, 297).

Justice Brennan also noted that the question of whether personal jurisdiction exists does not end with a finding that the nonresident defendant has purposely established minimum contacts and stated:

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with '*fair play and substantial justice.*' * * * Thus courts in 'appropriate cases[s]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' * * * *These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.* * * * On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (Citations omitted and emphasis added.) *Id.* at 476-477.

In light of the guidelines articulated above, and after a thorough review of the record before us, it is apparent that Mitchell's *purposefully directed* activities at an Ohio-based limited partnership, so that it could *reasonably anticipate being haled into* an Ohio court. Moreover, it is equally evident that the assertion of personal jurisdiction over Mitchell's comports with *fair play and substantial justice.*

Mitchell's conducted negotiations of the lease terms by telephone contact to Ohio with appellant, an Ohio-based limited partnership. Mitchell's intentionally and *purposefully* directed activities at Ohio when it agreed to the contract terms, signed the document in

Georgia and sent it to Ohio to be signed by appellant. The ten-year lease requires that Mitchell's submit to appellant on a monthly or annual basis rental payments, maintenance costs, association fees and sales reports. If Mitchell's refuses to make the contractually required payments in Ohio, as alleged by appellant, such refusal will undoubtedly cause foreseeable injuries. Further, Mitchell's is not provided with unfettered control of its retail sale and rental operation. The lease calls for appellant's approval in many areas and also restricts or regulates many activities. Mitchell's is also aware that all communications need be directed to appellant in Ohio.

Mitchell's, as does the court of appeals, urges that because the lease explicitly states that Kentucky law controls the rights of the parties, Mitchell's is not shielded by the benefits and protections of Ohio law, and, therefore, it could not reasonably have anticipated being haled into an Ohio court. We disagree.

Although the lease contains a choice-of-law provision, this, standing alone, does not automatically defeat a finding that minimum contacts exist. *Burger King, supra,* at 478. Whether a nonresident defendant purposefully established minimum contacts with the forum depends upon the dealings between the parties prior to and following the document's execution, contemplated future consequences, *along with the terms* of the contract. *Id.* at 479. We are aware that the choice-of-law provision may be a significant factor in the overall picture; however, considering Mitchell's dealings and the creation of continuing duties and obligations with appellant, we are satisfied that the guidelines set forth in *Burger King* have been met.

Having found that Mitchell's pur-

posefully established minimum contacts with Ohio, it now remains only to inquire whether the assertion of jurisdiction comports with "fair play and substantial justice."

Initially, we find that the burden on Mitchell's is not excessive. Again, in *Burger King, supra,* the court noted that "* * * because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. *McGee* v. *International Life Insurance Co.* [(1957), 355 U.S. 220], * * *." *Id.* at 474. Mitchell's, a Georgia corporation, operates one hundred one stores throughout the Southeastern United States and Kentucky. Based on Mitchell's extensive operations, the fact that it elected to establish a store bordering appellant's state and considering today's modern means of transportation, it is not unreasonable for Mitchell's to defend itself in Ohio.

Finally, appellant's and the forum state's interest in adjudicating the dispute is strong. The General Assembly, pursuant to R.C. 2307.382(A)(1), intended to provide a forum for Ohio residents. Likewise, "* * * Ohio has an interest in resolving suits brought by one of its residents and has a substantial interest in seeing that its residents get the benefit of their bargains. * * *" *Wright Internatl. Express, Inc., supra,* at 791.

Accordingly, we reverse the judgment of the court of appeals and find that the trial court had an adequate basis upon which to assert personal jurisdiction over Mitchell's. The cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

Moyer, C.J., Sweeney, Holmes, Wright, H. Brown and Resnick, JJ., concur.