OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Bryan Municipal Court which denied appellant's motion to dismiss for lack of personal jurisdiction, ordered appellant to pay appellee for carpeting installed in appellant's home and dismissed appellant's counterclaim for damages pursuant to R.C. 1345.02 and R.C.1345.03. For the reasons that follow, we affirm the judgment of the trial court.
Appellant, Al Molargik, sets forth the following three assignments of error on appeal:
"FIRST ASSIGNMENT OF ERROR
 "The trial court abused its discretion by overruling the Defendant-Appellant's Motion to Dismiss for lack of personal jurisdiction over this Defendant-Appellant.
"SECOND ASSIGNMENT OF ERROR
 "The trial court abused its discretion when it failed to find that Plaintiff-Appellee violated the Consumer Sales Practice Act.
"THIRD ASSIGNMENT OF ERROR
 "The trial court erred in its award of judgment and damages when it failed to consider the actual square yardage required for the project as compared to the square yardage charged by the Plaintiff-Appellee."
The facts that are relevant to the issues raised on appeal are as follows. Appellee, Denver Davis, and his son, Jeff Davis, are the owners/operators, of Denver Davis Floor Covering in Williams County, Ohio. In July 1997, appellant hired appellee to install carpet in appellant's newly-built home in Garrett, Indiana. Appellant and his wife chose a berber-style carpet from samples Jeff Davis brought to appellant's home. Appellee estimated that the price of the carpet chosen by appellant, including pad and installation, would be $4,800. Later, appellee discounted the price of the carpet, reducing the total cost of the installation to $4,221. Appellant paid appellee a deposit of $1,000.
Appellee installed the carpet while appellant was on vacation. When appellant returned from vacation, his wife complained to appellee that one of the carpet edges in the foyer was loose. Several weeks later, appellant told appellee the carpet he installed was not the same style or quality as the carpet appellant ordered, and asked appellee to remove and replace the carpet. When appellee refused to do so, appellee said he would not pay the remaining balance due. Appellant later removed the carpet himself and hired Steven Incremona to replace it with another style of berber carpet.
On November 20, 1997, appellee filed the complaint herein against appellant for $3,221. On December 29, 1997, appellant filed a motion to dismiss the complaint for lack of personal jurisdiction, which the trial court denied on June 23, 1998. On August 12, 1998, appellant filed an answer to the complaint and a counterclaim, in which he asked for treble damages pursuant to R.C. Chapter 1345, the Ohio Consumer Sales Practices Act ("OCSPA"), because appellee engaged in "unfair, deceptive or unconscionable acts or practices."
On September 23, 1998, a non-jury trial was held at which testimony was presented by appellant, appellee and Steven Incremona. As to jurisdiction, appellant testified that he never visited appellee's place of business in Ohio; however, he made several telephone calls to Ohio to discuss the carpet purchase and installation. As to the carpet, appellant testified that appellee told him the factory had "shipped the wrong carpet." Appellant stated that the carpet appellee installed was not of good quality, and that when he took out the carpet, he saw that the padding underneath had been improperly installed. Appellant further stated that appellee sold him one hundred seventy nine yards of carpet; however, Incremona used only one hundred fifty six yards of carpet to cover the same area.
Appellee testified at trial that he ordered and installed the carpet that appellant had picked out from a sample. Appellee further testified that when he spoke to appellant's wife about the loose carpet in the foyer, she did not state that she and appellant were dissatisfied with the quality or style of the carpet. Appellee stated he may have told appellee that sometimes the manufacturer ships the wrong carpet.
Incremona testified at trial that the quality of the carpet he installed in appellant's home was not as good as the carpet appellee claims to have installed. Incremona further testified that the pad under the carpet appellee installed was "pieced together" and had "dead spots" where the pad was either missing or compressed by too many staples. Incremona stated that he never saw the actual carpet installed by appellee.
In addition to the above testimony, the trial court admitted into evidence photographs of various carpet samples, photographs of the padding installed by appellee, and a copy of a handwritten note in which appellant told appellee he wanted to "get together so I can pay you." On October 1, 1998, the trial court filed a judgment entry in which it found that it had personal jurisdiction over appellant, and that appellee had installed the carpet selected by appellant in a "workmanlike and proper manner." The court further found:
 "* * * [appellee] did not misrepresent the quality of the carpeting that was installed in [appellant's] home.
 "* * * [appellee] did not make inaccurate representations concerning the characteristics of the carpeting.
 "* * * [appellee] did not commit unfair, deceptive and unconscionable acts or practices as defined in Ohio Revised Code Sections 1345.02 and 1345.03.
 "* * * [appellee] did not intentionally and willfully deny [appellant] adequate replacement of the carpeting and padding."
Accordingly, the trial court ordered appellant to pay appellee the $3,221 balance due for the carpet and dismissed appellant's counterclaim for damages under the OCSPA. On October 13, 1998, a timely notice of appeal was filed.
Appellant asserts in his first assignment of error that the trial court erred when it denied his motion to dismiss for lack of personal jurisdiction.
R.C. 2307.382, Ohio's long-arm statute, provides in relevant part:
 "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the persons' * * *
"(1) transacting any business in this state * * *."
Civ.R. 4.3(A)(1) similarly provides, in relevant part:
 "(A) * * * Service of process may be made outside of this state * * * upon a person who * * * is a nonresident of this state * * *. `Person' includes an individual * * * or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
"(1) Transacting any business in this state * * *."
The term "transacting any business in this state" has been given a broad interpretation by the Ohio Supreme Court. See Goldstein v.Christiansen, supra, at 235-236. The term "transact" encompasses "'to carry on business'" and "'to have dealings." Id., citingKentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc. (1990),53 Ohio St.3d 73. Personal jurisdiction does not require physical presence in the forum state. See Kentucky Oaks Mall Co., supra (A commercial nonresident lessee, for purposes of personal jurisdiction, is "transacting any business" within the plain and common meaning of the phrase, where the lessee negotiates, and through the course of dealing becomes obligated, to make payments to its lessor in Ohio.).
In addition, the assertion of jurisdiction over a non-resident defendant does not violate due process if the non-resident possesses certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Internatl. Shoe Co.v. Washington (1945), 326 U.S. 310, 316. The relevant inquiry is whether the non-resident defendant purposely availed himself of minimum contacts in the forum state such that he or she should reasonably anticipate being haled into court there. Burger KingCorp. v. Rudzewicz (1985), 471 U.S. 462, 474, citing World-WideVolkswagen Corp. v. Woodson (1980), 444 U.S. 286, 295. Accordingly, jurisdiction is proper where the contacts that proximately result from the defendant's actions create a substantial connection with the forum. Even a single act occurring within a state will support jurisdiction if it creates more than an "attenuated affiliation" with that forum. Id. at 475, fn. 18.
In this case, appellant's trial testimony demonstrates that the parties had an ongoing business relationship that began when appellant initially hired appellee, an Ohio businessman, to install a Pergo floor in his home. The parties' relationship continued when appellant purposely initiated contact with appellee with the intent of purchasing carpet and arranging for appellee to come from Ohio to Indiana to install the carpet.
The record in this case demonstrates that appellee's cause of action clearly arises out of appellant's transaction of business in Ohio. In addition, because appellant purposely engaged in a business relationship with an Ohio businessman, he could have reasonably anticipated being haled into an Ohio court in the event that a dispute arose. Accordingly, the trial court did not err by denying appellant's motion to dismiss the complaint herein for lack of personal jurisdiction. Appellant's first assignment of error is not well-taken.
Appellant's second and third assignments of error will be considered together since he asserts in both that the trial court's judgment was against the manifest weight of the evidence. In support of his second assignment of error, appellant argues that appellee committed a deceptive act or practice in violation of R.C. 1345.02(B)(2) by misrepresenting the quality and style of the carpet he installed in appellant's home. Appellant also argues that the trial court erred by finding that appellee properly installed the padding under the carpet. Appellant further argues that appellee "failed to provide the Defendant-Appellant with a notice of his right to cancellation" in violation of R.C. 1345.03(7). In support of his third assignment of error, appellant asserts that the trial court erred by finding that appellee properly charged him for one hundred seventy-nine yards of carpet when "it is undisputed that the amount of carpeting necessary to complete the project was actually One Hundred Fifty-six (156) yards * * *."
It is well-established that, in reviewing the judgment of the trial court, we cannot substitute our judgment for that of the trial court. It was that court's function as the trier of fact to observe the demeanor of the witnesses, examine the evidence and weigh the credibility of the testimony and evidence presented. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. A judgment that is supported by some competent, credible evidence going to all of the essential elements of the case should not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279.
In this case, after reviewing the exhibits, photographs and the testimony of three witnesses as set forth above, the trial court found that appellee did not misrepresent the quality or amount of the carpet to be installed in appellant's home, and that the carpet and padding was installed in a workmanlike manner. As to the issue of notification, R.C. 1345.03(B)(7) provides that it is an "unconscionable act or practice" for a supplier to refuse, without justification, to make a refund in cash or by check for a returned item purchased by cash or check unless a sign stating the supplier's refund policy is conspicuously posted at his place of business. The statute does not address the issue of notification of a right to "cancel" a contract in the event that a purchaser is dissatisfied and thereafter refuses to pay for an item which has already been installed in his home. Accordingly, R.C. 1345.03 is inapplicable to the facts of this case.
This court has reviewed the entire record of proceedings before the trial court and, upon consideration thereof and the law, finds that there was competent, credible evidence to support the trial court's judgment. Accordingly, the court did not err by ordering appellant to pay appellee $3,221 for the carpet, or by appellant's counterclaim for damages under the OCSPA. Appellant's second and third assignments of error are not well-taken. The judgment of the Bryan Municipal Court is affirmed. Court costs of these proceedings are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist. Loc. App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., JUDGE
Richard W. Knepper, J., JUDGE
Mark L. Pietrykowski, J., JUDGE
CONCUR.