OPINION
{¶ 1} Cardinal Distribution is appealing the dismissal of the lawsuit it filed against Duane Reade and others. Cardinal Distribution assigns a single error for our consideration:
 {¶ 2} "The common pleas court erred by sustaining Duane Reade's motion to dismiss for lack of personal jurisdiction."
 {¶ 3} Cardinal Distribution is a trade name used by two corporations, James W. Daly, Inc., and Whitmire Distribution Corporation. Both corporations are subsidiaries of Cardinal Health, Inc., and both corporations are engaged in pharmaceutical distribution.
 {¶ 4} Duane Reade is a general partnership which also has several affiliated entities. Duane Reade operates several drug stores in New York City and the surrounding area.
 {¶ 5} In the fall of 2000, Cardinal Distribution and Duane Reade entered into a five-year wholesale supply agreement. Cardinal Distribution was expected to provide a wide range of services and products to Duane Reade. In turn, Duane Reade was expected to pay for the goods and services it received.
 {¶ 6} By October 2001, the business relationship was in trouble. General counsel for Duane Reade sent a letter intended to terminate the wholesale supply agreement as then in place. The letter included an offer to continue in a business relationship under different terms. At about the same time, Duane Reade stopped paying Cardinal Distribution on outstanding invoices.
 {¶ 7} Cardinal Distribution responded by filing a lawsuit in a state court of Ohio. Duane Reade then sought dismissal of the lawsuit, alleging that Duane Reade had insufficient contacts with the state of Ohio to justify Ohio courts asserting jurisdiction over the parties.
 {¶ 8} The trial court first determined that because the evidence was essentially uncontroverted that the defendants had "transacted business" within Ohio, the exercise of jurisdiction was proper pursuant to R.C. 2307.382, Ohio's "long-arm" statute, and Civ.R. 4.3. However, notwithstanding that determination, the trial court nonetheless concluded that defendants' contacts with Ohio were insufficient such that "* * * any exercise of personal jurisdiction over [d]efendants offends due process * * *." (Decision at 13.)
 {¶ 9} The Supreme Court of Ohio has provided guidance to Ohio courts as to the appropriate legal analysis to be undertaken when determining whether personal jurisdiction in the Ohio courts exists. For instance, in the context of a commercial lease, the Supreme Court of Ohio decided Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc. (1990),53 Ohio St.3d 73, the syllabus to which reads:
 {¶ 10} "A commercial nonresident lessee, for purposes of personal jurisdiction, is `transacting any business' within the plain and common meaning of the phrase, where the lessee negotiates, and through the course of dealing becomes obligated, to make payments to its lessor in Ohio. (R.C. 2307.382 [A][1] and Civ.R. 4.3[A][1], construed and applied.)"
 {¶ 11} The body of the opinion, although technically dictum, is instructive for lower courts addressing questions of personal jurisdiction. Specifically, the Kentucky Oaks Mall case clearly indicates, in accord with well-established precedent, that jurisdiction is permitted over nonresident defendants who are, as a threshold matter, "transacting any business" in Ohio. Id. at 75.
 {¶ 12} In 1994, the Supreme Court of Ohio extended the reach of the Kentucky Oaks Mall case when the court decided U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc. (1994),68 Ohio St.3d 181. The syllabus of U.S. Sprint reads:
 {¶ 13} "Once an Ohio court acquires personal jurisdiction over a nonresident defendant for claims arising in Ohio, Civ.R. 18(A) permits joinder of related claims that do not arise in Ohio, as long as granting jurisdiction for all claims does not deprive defendant of the right to due process of law." (Emphasis added.)
 {¶ 14} In U.S. Sprint, the court also set forth the following two-prong test, that which the trial court followed in the instant case, to be applied in determining the propriety of invoking personal jurisdiction over a nonresident defendant:
 {¶ 15} "When determining whether a state court has personal jurisdiction over a foreign corporation, the court is obligated to engage in a two-step analysis. First, the court must determine whether the state's `long-arm' statute and applicable civil rule confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. * * *" Id. at 183-184. (Footnote omitted.)
 {¶ 16} In a similar vein, the United States Supreme Court has provided guidance as to the federal standard for due process of law, requiring that a nonresident's ties must create a substantial connection or "minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Internatl. Shoe Co. v. Washington (1945), 326 U.S. 310,66 S.Ct. 160. Requiring such minimum contacts protects a nonresident defendant "against the burdens of litigating in a distant or inconvenient forum." World-Wide Volkswagen Corp. v. Woodson (1980), 444 U.S. 286,100 S.Ct. 559.
 {¶ 17} In Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462,475-476, 105 S.Ct. 2174, the Supreme Court spoke directly to the fundamental fairness and due process considerations, holding:
 {¶ 18} "[W]here the defendant `deliberately' has engaged in significant activities within a [s]tate, * * * or has created `continuing obligations' between himself and residents of the forum, * * * he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by `the benefits and protections' of the forum's laws[,] it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.
 {¶ 19} "* * *
 {¶ 20} "Once it has been decided that a defendant purposefully established minimum contacts within the forum [s]tate, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with `fair play and substantial justice.'" (Citations omitted.)
 {¶ 21} Based upon the rulings of the Supreme Court of Ohio and the United States Supreme Court, this court has found that the Ohio Supreme Court contemplates Ohio's courts having jurisdiction to the full extent permitted by federal due process standards. See Columbus Show Case Co. v. CEE Contracting, Inc. (1992), 75 Ohio App.3d 559.
 {¶ 22} The issue before the trial court and before this court on appeal thus becomes whether or not the record establishes that Duane Reade had or has sufficient ties to the state of Ohio such that Ohio courts can exercise jurisdiction consistent with due process of law. The Supreme Court of Ohio has adopted a case-by-case approach in determining the existence or nonexistence of sufficient minimum contacts, together with the requisite due process considerations. See, e.g., Kentucky Oaks Mall, supra.
 {¶ 23} The trial court considered the merits of the jurisdictional motion based upon the record and supporting affidavits, without an evidentiary hearing. In Giachetti v. Holmes (1984), 14 Ohio App.3d 306,307, the court explained the appropriate standard to be applied in making such a determination:
 {¶ 24} "If the court determines its jurisdiction without an evidentiary hearing, it must view allegations in the pleadings and document evidence in the light most favorable to the non-moving party. The court must resolve all reasonable competing * * * inferences in favor of such non-moving party. Barile v. Univ. of Virginia (1981),2 Ohio App.3d 233, 234; Welsh v. Gibbs (C.A.6, 1980), 631 F.2d 436, 439.
 {¶ 25} "If the court holds no evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to withstand the motion to dismiss. If plaintiff produces evidence from which reasonable minds could find personal jurisdiction, the court must refuse dismissal, absent an evidentiary hearing." (Emphasis added.)
 {¶ 26} An appellate court's review of a trial court's decision granting such a dismissal motion is de novo. Id.
 {¶ 27} In their brief, counsel for the Duane Reade entities devote significant space to arguing that the Cardinal Distribution entities do not have significant ties to Ohio, except for Cardinal Health, Inc., which is the ultimate parent company. However, the ties of Cardinal Distribution and Cardinal Health, Inc., are not the issue. The Cardinal Distribution entities invoked the jurisdiction of the Ohio courts and are clearly within the jurisdiction of the Ohio courts because they filed the lawsuit in Ohio.
 {¶ 28} More to the point, the Duane Reade entities assert, via affidavits presented to the trial court, other facts which do bear on the presence or lack of substantial ties to Ohio for the Duane Reade entities. While conceding that the Duane Reade entities did engage in activity which courts have found to constitute "transacting business" in Ohio, they nevertheless emphasize facts which purportedly demonstrate an absence of the requisite "minimum contacts" such that subjecting them to litigation in Ohio would violate principles of fundamental fairness and due process, including: (1) the goods purchased were shipped from warehouses in Massachusetts or New York; (2) payments were tendered to Illinois or North Carolina; (3) Returns and credits were handled through offices in Massachusetts; (4) Duane Reade has no office in Ohio; (5) Duane Reade sells no goods in Ohio; (6) the wholesale supply agreement was not executed in Ohio; and (7) no representative of a Duane Reade entity was present in Ohio during the negotiation of the wholesale supply agreement.
 {¶ 29} In response, the Cardinal Distribution entities presented affidavits asserting the following facts, while not disputing the accuracy of the facts argued by the Duane Reade entities: (1) orders for pharmaceuticals were received in Ohio and electronically processed by computers in Ohio before being forwarded to Massachusetts for shipment; (2) Duane Reade negotiated with persons affiliated with Cardinal Distribution who were located in Ohio when the negotiations took place; (3) Cardinal Distribution performed services for the Duane Reade entities in Ohio, including the monitoring of licensing requirements and purchasing history; (4) special services were requested from Ohio-based staff of Cardinal Distribution; (5) contacts were made to Ohio employees to initiate purchases of pharmaceuticals; (6) the parties agreed, pursuant to the contract's "choice of law" provision, that Ohio law would govern interpretation of the contract/wholesale supply agreement for at least part of the time an agreement existed; (7) weekly teleconferences were held with employees of Cardinal Distribution entities in Ohio; and (8) the data processing records were maintained in Ohio.
 {¶ 30} As indicated infra, the trial court ultimately agreed with the Duane Reade entities' position that although they did transact business in Ohio, their activities did not amount to sufficient "minimum contacts" such that they could foresee being hailed to litigate in Ohio. Accordingly, the trial court concluded that any exercise of personal jurisdiction over the defendants would offend due process principles. We disagree.
 {¶ 31} In KB Circuits, Inc. v. BECS Technology, Inc. (Jan. 18, 2001), Franklin App. No. 00AP-621, this court, following Burger King, supra, and its progeny, spoke to the issue of "minimum contacts" within the context of modern-day business practices ever-present in the instant case:
 {¶ 32} "`Minimum contacts' has been defined as conduct which creates a substantial connection to the forum state, creates continuing obligations between a defendant and a resident of the forum, or conducting significant activities within a state.' Hercules Tire 
Rubber Co. v. Murphy (1999), 133 Ohio App.3d 97, 101 * * *. Jurisdiction of a court is not automatically defeated by a showing that the corporation has no physical presence in the state.
 {¶ 33} "Although territorial presence frequently will enhance a potential defendant's affiliation with a [s]tate and reinforce the reasonable forcibility of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a [s]tate in which business is conducted. So long as a commercial actor's efforts are `purposefully directed' toward residents of another [s]tate, we gave consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. * * *" Id. (Emphasis added.)
 {¶ 34} We view this as a close case, but find, balancing all the facts involved, that the Duane Reade entities had substantial ties to Ohio for purposes of exercising personal jurisdiction. Given the standard by which we are bound, we construe the evidence in a light most favorable to appellants and conclude that the evidence before the trial court was sufficient so as to survive a motion to dismiss based upon the demonstration of sufficient minimum contacts with Ohio. Specifically, we find that the evidence presented establishes that the Duane Reade entities purposefully and sufficiently availed themselves of Ohio's jurisdiction by entering into and creating continuing obligations between themselves and the Ohio-situated appellants.
 {¶ 35} Based upon the foregoing, we sustain the sole assignment of error.
 {¶ 36} Having sustained the assignment of error, the judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
BOWMAN and KLATT, JJ., concur.