MUZZIN, Appellee,

v.

BROOKS, Appellant.

[Cite as *Muzzin v. Brooks,* 168 Ohio App.3d 231, 2006-Ohio-3844.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 87085.

Decided July 27, 2006.

John J. Montello, for appellee.

Christopher J. Mallin, for appellant.

SEAN C. GALLAGHER, Judge.

{¶ 1} Defendant-appellant, Thomas W. Brooks Sr., appeals from the decision of the Bedford Municipal Court that awarded judgment in favor of plaintiff-appellee, Chris Muzzin, upon finding that Brooks failed to deliver a title, and thereby ownership, of a damaged vehicle to Muzzin. For the reasons stated below, we affirm.

{¶ 2} Muzzin filed a complaint on April 8, 2004, alleging that he had purchased a Rolls Royce from Brooks for $5,000 but that Brooks had failed to deliver the title to the vehicle or refund the purchase money. Attached to the complaint was a document, purportedly signed by Brooks, stating that he had sold the vehicle to Muzzin for $5,000 on February 20, 2001, and that a check had been provided for that amount. Brooks filed a motion to dismiss that was denied by the trial court.

{¶ 3} The case proceeded to trial, where the following facts were revealed. Muzzin is an officer of Cuyahoga Supply & Tool, Inc., located in Bedford Heights, Ohio. His company had business dealings with a Kentucky pipe-manufacturing company called TBA, which was owned by Brooks. Through the course of dealings with an Ohio salesman for TBA named Sam, Muzzin was made aware of the fact that Brooks had for sale a Rolls Royce that had been in an accident.[1]

{¶ 4} Muzzin is a resident of Bedford Heights, Ohio, and Brooks is a resident of Shepherdsville, Kentucky. Brooks testified that he had never in his personal capacity transacted business in Ohio.

{¶ 5} Muzzin inquired further about the vehicle and later testified that he had negotiated through Sam for the purchase of the vehicle. Muzzin was provided with photographs of the vehicle and was aware that it was a damaged vehicle. Muzzin stated that he believed he had spoken with Brooks once to arrange for the pickup of the vehicle in Kentucky. Muzzin claimed that he had asked Brooks if he had the title to the vehicle and Brooks responded that he had it in his desk drawer and that he would have all the paperwork together when Brooks came for the vehicle.

{¶ 6} Muzzin sent a truck driver, along with a check for the purchase price, down to Kentucky to pick up the Rolls Royce. Upon arriving, the driver called Muzzin and told him that they could not find the title but would send it later. Muzzin's driver had a statement signed with Brooks's name that indicated that the title would be mailed. The driver then brought the car back to Ohio. The vehicle was taken to a body shop in Ohio, where it still remained at the time of trial. Apparently no repair work or estimates were ever obtained because of the lack of title.

{¶ 7} A few weeks after the car was brought to Ohio, Muzzin was told that the title could not be found. Muzzin continued to ask Brooks's representatives about the title. Eventually, Muzzin was told that the title to the vehicle could not be obtained because the insurance company had declared the vehicle totaled. Muz-

---

1. Muzzin testified that Sam told him about the vehicle being for sale. Sam testified that Muzzin had overheard him on the phone talking about the vehicle and then inquired about it. Sam maintained that he did not know much about the vehicle.

zin responded that the vehicle was worthless without the title. Muzzin did not take any steps of his own to obtain a title for the vehicle.

{¶ 8} Brooks testified that he never directly spoke with Muzzin and that he was not present when the vehicle was picked up. He stated that he agreed to sell it for $5,000, that he never indicated that he had the title, and that he had the vehicle "junked" so he would not have to pay taxes on it. Brooks further testified that he told his insurance company that the vehicle had been totaled, and his insurance company paid him $32,000 for the totaled vehicle. He also stated that he had gone to a courthouse in Kentucky where his title was taken and where he was told that he could get the vehicle retitled if he submitted proof that it was refurbished. When shown the exhibits at trial purportedly signed by him, Brooks stated that it was not his signature and that the documents had been falsified.

{¶ 9} Because Brooks failed to provide Muzzin with a title for the vehicle, Muzzin brought this action to recover the $5,000 he had paid for the vehicle. The trial court awarded judgment to Muzzin and ordered that the vehicle revert to Brooks. The trial court found that Muzzin expected a title and that Brooks's employees had told him and written to him that a title would be sent, even though Brooks admitted to canceling the title.[2]

{¶ 10} Brooks brought this appeal, raising three assignments of error for our review. His first and second assignments of error challenge personal jurisdiction and provide as follows:

{¶ 11} "1. The trial court erred in denying [Brooks's] pretrial motion to dismiss for lack of jurisdiction."

{¶ 12} "2. The trial court erred in denying [Brooks's] motion to dismiss for lack of jurisdiction made at the close of evidence."

{¶ 13} A court must have personal jurisdiction over a defendant in order to hear and determine an action. *Maryhew v. Yova* (1984), 11 Ohio St.3d 154, 156, 11 OBR 471, 464 N.E.2d 538. An appellate court reviews a trial court's determination of whether personal jurisdiction over a party exists under a de novo standard of review. *Lewis v. Horace Mann Ins. Co.*, Cuyahoga App. No. 82530, 2003-Ohio-5248, 2003 WL 22251577.

{¶ 14} The determination of whether the court has personal jurisdiction involves a two-step process. "First, the court must determine whether the state's 'long-arm' statute and applicable civil rule confer personal jurisdiction, and, if so,

2. The trial court also found that title transfer is a requirement for ownership under either Ohio or Kentucky law. We decline to address this issue, because it is not pertinent to determining this appeal.

whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048.

{¶ 15} Civ.R. 4.3 and R.C. 2307.382 govern the personal jurisdiction of the Ohio courts. Personal jurisdiction is proper in this case pursuant to Civ.R. 4.3(A)(1) and R.C. 2307.382(A)(1). Civ.R. 4.3(A) permits service of process outside of this state upon a person who "acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's: (1) Transacting any business in this state." Similarly, R.C. 2307.382 provides: "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state."

{¶ 16} The Ohio Supreme Court has stated that "R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are transacting any business in Ohio." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477. In explaining the meaning of the word "transact" in the context of the statute, the court stated that "transact" means " 'to prosecute negotiations; to carry on business; to have dealings.' " (Emphasis omitted.) Id., quoting Black's Law Dictionary (5th Ed.1979), 1341; *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 236, 638 N.E.2d 541.

{¶ 17} Relying upon the Ohio Supreme Court's broad interpretation of the phrase "transacting any business" in Ohio's long-arm statute, we conclude that Brooks did transact business in Ohio. Although Brooks resided in Kentucky, the vehicle was located in Kentucky, and the vehicle was picked up and paid for in Kentucky, the negotiations and dealings were primarily in Ohio. Muzzin became aware of Brooks's vehicle being for sale through the course of his business dealings with TBA in Ohio. TBA conducts business in Ohio and has an agent in Ohio to facilitate sales and business transactions. Brooks utilized agents of his business to handle the sale of the vehicle to Muzzin, an Ohio resident. Brooks also sent photographs of the vehicle to Muzzin in Ohio.

{¶ 18} We find that Muzzin has made a prima facie showing that Brooks transacted business in the state of Ohio as contemplated by Ohio's long-arm statute. We must now determine whether the exercise of personal jurisdiction over Brooks comports with the Due Process Clause of the Fourteenth Amendment. See, e.g., *Goldstein*, 70 Ohio St.3d at 235, 638 N.E.2d 541.

{¶ 19} Due process mandates that a court exercise jurisdiction only if the defendant has sufficient minimum contacts with the state that summoning the party to Ohio would not offend the "traditional notions of fair play and substantial justice." *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95. In determining whether a defendant has the necessary minimum contacts with the forum, a court should consider "the number of contacts, the nature and quality of the contacts, the source and connection between the cause of action and the contacts, the interest of the forum state[,] and the convenience of the parties." *M & W Contrs., Inc. v. Arch Mineral Corp.* (S.D.Ohio 1971), 335 F.Supp. 972, 973–974. The touchstone is whether the nonresident defendant purposely established contacts in the forum state such that the defendant should reasonably anticipate being haled into court in that state. *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528; *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490.

{¶ 20} Here, again, Brooks chose to sell his vehicle to Muzzin, an Ohio resident, who became aware of the vehicle through his course of dealings with Brooks's business, which conducted activities in Ohio. Brooks used the agents of his business to negotiate the sale in Ohio. There was evidence that Brooks was to send the title to Ohio, and his failure to do so became the basis for this action. We hold that Brooks has sufficient contacts with Ohio to make the exercise of jurisdiction over him comport with traditional notions of fair play and substantial justice. Further, under these facts, Brooks should have reasonably anticipated that if a dispute arose, he could be haled into an Ohio court.

{¶ 21} Relying on the foregoing analysis, we conclude that the trial court had personal jurisdiction over Brooks, and we overrule Brooks's first and second assignments of error.

{¶ 22} Brooks's third assignment of error provides as follows:

{¶ 23} "3. The trial court erred in not properly applying Kentucky law to the requirements of the transaction from which this case arises."

{¶ 24} Brooks implies that Kentucky law does not provide for a totaled vehicle to have a title comparable to an Ohio salvage title. Brooks further claims that the trial court erred in finding that a title transfer was a requirement of ownership. Because Brooks has failed to cite any legal authority to support this argument, this court is not obliged to address it. We also do not believe such an argument is pertinent to this case.

{¶ 25} The trial court found that Muzzin expected a title and that Brooks, through his agents, informed Muzzin that a title would be sent. A review of the record also shows that Muzzin testified that Brooks told him that Brooks

had the title in his desk drawer, but no title was provided. Brooks also stated that despite repeated representations that a title would be sent, no title was ever delivered. A reasonable trier of fact could conclude from this record that a valid title was a condition of the sale. Since no title was provided, Muzzin was entitled to rescind the contract.[3]

{¶ 26} Brooks's third assignment of error is overruled.

Judgment affirmed.

CELEBREZZE, P.J., concurs.

KARPINSKI, J., concurs in judgment only.

---

**3.** We note that the facts of this case also support a claim for fraudulent misrepresentation. However, the complaint did not raise this cause of action.