[Cite as *Schwab v. Schwab*, 2020-Ohio-560.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| MARY LYNN SCHWAB | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellant | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2019CA00082 |
| DAVID A. SCHWAB | |
| Defendant-Appellee | O P I N I O N |



CHARACTER OF PROCEEDING:      Civil Appeal from the Court of Common
Pleas, Case No.  2018CV00572


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      February 18, 2020


APPEARANCES:

For Plaintiff-Appellant      For Defendant-Appellee

F. THOMAS VICKERS      CHARLES V. LONGO
VICKERS LAW GROUP CO., LPA      CHARLES V. LONGO CO., LPA
1119 Bassett Road      15550 Chagrin Blvd., Suite 320
Westlake, Ohio  44145      Beachwood, Ohio  44122

*Wise, J.*

**{¶1}** Plaintiff-Appellant Mary Lynn Schwab appeals the May 13, 2019, decision of the Stark County Court of Common Pleas granting Defendant-Appellee's Motion to Dismiss and directing a verdict in favor of Defendant-Appellee following a jury trial.

**{¶2}** Defendant-Appellee in this matter is David A. Schwab.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶3}** The relevant facts presented at the jury trial are as follows:

**{¶4}** This action arises out of a family Trust which was settled in Florida on April 1, 1992, by Jerry Schwab. Jerry Schwab's two children, Appellant Mary Lynn Schwab and Appellee David A. Schwab are beneficiaries of the Trust and members of the Trust's 3-member Advisory Committee which provides direction to the Trustee concerning Trust assets and is responsible for paying policy premiums. (Tr. II at 163). From April 1, 1992, through July 2, 2015, Huntington Bank served as Trustee of the Trust.

**{¶5}** The Trust consisted of cash and three (3) life insurance policies. In 2013, those insurance policies had a total death benefit of over $9 million. (Tr. II at 163).

**{¶6}** In 2012, Appellee David Schwab and Jerry Schwab filed a complaint in Collier County, Florida, against Huntington Bank as Trustee, which was subsequently removed to the U.S. District Court for the Middle District of Florida. The Florida litigation was resolved pursuant to a Settlement Agreement that was executed in July, 2014. All activity relating to the Settlement Agreement occurred in Florida. (M.L. Schwab Depo. at 173-174, 178; see also D. Schwab Aff. ¶ 9).

**{¶7}** Appellee received a payment in conjunction with the settlement of the Florida litigation, as described in the Settlement Agreement, which consisted of

$100,000.00 paid by Huntington Bank to Appellee David Schwab and his father Jerry Schwab for reimbursement of a portion of legal fees they incurred in the Florida litigation. (D. Schwab 4/4/19 Aff. ¶10). It is undisputed that the Trust did not incur any expense or damage as a result of the settlement payment made directly by Huntington Bank. (D. Schwab 4/4/19 Aff. ¶10). The $100,000.00 check was issued on July 24, 2014, from Huntington Bank to Appellee and his attorney and was drawn from a Huntington Bank account ending in 7250. By contrast, the Trust's bank account number at Huntington Bank for the accounting period from June 1, 2014, to May 31, 2015, ended in 4903.

{¶8} As an additional part of the Settlement Agreement, because of certain claims in the Florida litigation, Huntington Bank, as Trustee of the Trust, agreed to accept $80,000.00 from the Trust as full settlement for its $600,000.00 claim tor reimbursement of attorney fees relating to the Florida Litigation and other lawsuits. (*See* 4/4/19 D. Schwab Aff. ¶11; Settlement Agreement). As referenced in the Settlement Agreement, Huntington Bank acted as the Trustee of the Trust and in that capacity was solely responsible for the payment of the $80,000.00 from Trust assets. (*See* Settlement Agreement, 4/4/19 D. Schwab Aff. ¶12). The Settlement Agreement stated that Appellee would "support a request to the Trust Advisory Committee to permit the Trust to borrow against or liquidate insurance policies owned by the Trust as needed to generate the cash to pay the [$80,000.00 in attorney] Fees." (Settlement Agreement, p. 2, ¶4). To Appellee's knowledge and recollection, Huntington Bank did not request approval for the payment of attorney fees in the amount of $80,000.00 as described in the Settlement Agreement. (4/4/19 D. Schwab Aff. ¶14). Appellant conceded she did not know if Huntington ever made such a request. (M.L. Schwab Depo. at 194). Appellee did not receive a direct or

indirect benefit from the payment of attorney fees from Trust assets. (4/4/19 D. Schwab Aff. ¶13).

{¶9} It is undisputed that Appellee and Jerry Schwab are both Florida residents.

{¶10} In approximately 2015, Premier Bank nka Home Savings Bank was appointed as Trustee of the Trust. (D. Schwab Depo. at 10). On July 21, 2017, Home Savings Bank issued a check in the amount of $12,343.21 payable to "David A Schwab, Trustee of Schwab Irrev" in Florida. (*See*: D. Schwab Depo.) Appellee did not engage in any conduct to cause Home Savings Bank to send to him the H.S. Check. (Motion for Summary Judgment: Prelac Aff. at ¶4; *see also* 4/4/19 D. Schwab Aff. ¶4.) At the time, the Trust had no bank account within which to deposit the check. The Tax Identification Number (ETIN) related to the Trust was not known to Appellee, and he was not able to open a bank account into which the H.S. check could be deposited. (4/4/19 D. Schwab Aff. ¶5.)

{¶11} On or about October 10, 2017, after consulting with his parents, the settlors of the Trust, Appellee deposited the H.S. check into his personal account in Florida for safe keeping, until the Trust ETIN could be discovered to enable the H.S. check funds to be deposited in a Trust bank account. (D. Schwab Depo. 30-32; 4/4/19 D. Schwab Aff. ¶ 16.)

{¶12} Appellant commenced the instant lawsuit against Appellee on March 15, 2018, and subsequently filed an Amended Complaint, which alleged that Appellee breached fiduciary duties owed to the Trust and to Appellant as a beneficiary of the Trust. Specifically, Appellant took issue with Appellee's actions with regard to the $12,343.21 Home Savings Check; Appellee's receipt of $100,000.00 paid by Huntington Bank as part

of his personal Settlement Agreement with Huntington Bank; and Appellee's agreement to support Huntington Bank's future request to the Trust Advisory Committee to use Trust assets to pay $80,000.00 in attorney fees incurred in various lawsuits involving the Trust. (11/14/18 Amended Complaint, ¶¶17, 25, *see also* M.L. Schwab Depo. 168). Appellant sought damages in the amount of $192,343.21 and Appellee's removal from the Advisory Committee. (Amended Complaint ¶28.)

**{¶13}** On June 27, 2018, Appellee filed a Motion to Dismiss for Lack of Personal Jurisdiction.

**{¶14}** On July 25, 2018, Appellant filed her opposition to Appellee's motion to dismiss.

**{¶15}** On August 9, 2018, the trial court denied the Motion to Dismiss.

**{¶16}** On April 8, 2019, Appellee filed a Motion for Summary Judgment arguing lack of jurisdiction.

**{¶17}** On April 18, 2019, Appellant filed her Brief in Opposition to Appellee's Motion for Summary Judgment.

**{¶18}** By Judgment Entry filed May 2, 2019, the trial court denied Appellee's Motion for Summary Judgment.

**{¶19}** A jury trial commenced on May 8, 2019, wherein the Plaintiff-Appellant called only herself and Defendant-Appellee on cross-examination as witnesses and then rested her case. At that time Defendant-Appellee renewed his Motion to Dismiss and requested a directed verdict in his favor.

**{¶20}** By Judgment Entry filed May 13, 2019, the trial court granted Defendant-Appellee's Motion to Dismiss and directed a verdict in his favor, finding that Plaintiff-

Appellant failed to establish damages, failed to establish a breach of fiduciary duty, failed to establish personal jurisdiction over Defendant-Appellee and failed to establish that Stark County was the appropriate venue.

{¶21}  Appellant now appeals, raising the following assignment of error:

ASSIGNMENT OF ERROR

{¶22}  "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO DISMISS AND DIRECTING A VERDICT IN DEFENDANT'S FAVOR AT THE CLOSE OF PLAINTIFF'S CASE DURING A JURY TRIAL WHEN IT CONCLUDED THAT PLAINTIFF:

A. FAILED TO ESTABLISH A BREACH OF FIDUCIARY DUTY;

B. FAILED TO ESTABLISH DAMAGES;

C. FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DEFENDANT; AND,

D. FAILED TO ESTABLISH THAT STARK COUNTY WAS THE APPROPRIATE VENUE."

I.

{¶23}  In her sole assignment of error, Appellant argues that the trial court erred in granting Appellee's motion to dismiss and directing a verdict in Appellee's favor at the close of Appellant's case. We disagree.

*Personal Jurisdiction*

{¶24}  Appellant argues the trial court had personal jurisdiction over Appellee in this matter.

**{¶25}** " 'Jurisdiction' means 'the courts' statutory or constitutional power to adjudicate the case.' The term encompasses jurisdiction over the subject matter and over the person. * * * 'If a court acts without jurisdiction, then any proclamation by that court is void.' " (Citations omitted.) *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. Personal jurisdiction is rudimentary for a court to render a valid judgment over a defendant. *Maryhew v. Yova,* 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984). "This may be acquired either by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the court." *Id.*

**{¶26}** We review the trial court's decision on personal jurisdiction de novo as a question of law. *Fraley*, 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, at ¶ 11, *citing Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 27.

**{¶27}** The determination whether an Ohio trial court has personal jurisdiction over an out-of-state defendant requires a two-step inquiry. First, the court must determine whether the defendant's conduct falls within Ohio's long-arm statute or the applicable civil rule. If it does, then the court must consider whether the assertion of jurisdiction over the nonresident defendant would deprive the defendant of due process of law under the Fourteenth Amendment to the United States Constitution. *Id.* at ¶ 12, citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,* 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990).

**{¶28}** Appellant has the burden to establish the trial court's personal jurisdiction. *Henderson*, 6th Dist. Erie Nos. E-12-068, E-13-047, 2014-Ohio-4634, at ¶ 56; *Klunk v. Hocking Valley Ry. Co.,* 74 Ohio St. 125, 135, 77 N.E. 752 (1906) (at all times the burden of proof remains on the party whose case requires the proof of the fact at issue.). " 'Once a defendant has challenged the trial court's personal jurisdiction over him or her, the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence.' " (Citation omitted.) *State ex rel. DeWine v. 9150 Group, L.P.,* 2012-Ohio-3339, 977 N.E.2d 112, ¶ 8 (9th Dist.). "[P]reponderance of evidence means the greater weight of evidence. * * * The greater weight may be infinitesimal, and it is only necessary that it be sufficient to destroy the equilibrium." *Travelers' Ins. Co. v. Gath,* 118 Ohio St. 257, 261, 160 N.E. 710 (1928). Preponderance is a higher burden of proof than prima facie, which merely means "at first view" appearing sufficient to establish the fact unless rebutted. Carr v. Howard, 17 Ohio App.2d 233, 235, 246 N.E.2d 563 (2d Dist.1969).

**{¶29}** Ohio's long-arm statute, R.C. §2307.382(A)(1), and Civ.R. 4.3(A)(1) permit a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process to effectuate that jurisdiction Said long-arm statute sets forth specific acts by a defendant which give rise to personal jurisdiction:

**§2307.382 Personal jurisdiction**

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

***

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

\*\*\*

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

\*\*\*

{¶30} Civ.R. 4.3, the corresponding rules for service of process upon nonresidents, states:

(A) \*\*\* Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

(1) Transacting any business in this state;

\*\*\*

(9) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might reasonably have expected that some person would be injured by the act in this state[.]

**{¶31}** As the Supreme Court of Ohio emphasized, both the statute and the rule are broadly worded and permit jurisdiction over any defendant who is "transacting any business" in Ohio. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990). Quoting *Black's Law Dictionary* (5th Ed.1979), the court in *Kentucky Oaks* stated the term "transact" " 'means to *prosecute negotiations*; to carry on business; *to have dealings*,' " " 'but it is a *broader term than the word "contract" and may involve business negotiations* which have been either wholly or partly brought to a conclusion.' " (Emphasis sic.) *Id.* Whether a defendant has transacted any business in Ohio is determined on the particular facts of the case. *United States Sprint Communications Co.* at 185, 624 N.E.2d 1048.

**{¶32}** Here, Appellant's sole argument in support of personal jurisdiction is based on the Home Savings check which was sent to Appellee at his home in Fort Myers, Florida, and then deposited into a Florida bank account. The check itself had an address of St. Clairsville, Ohio, endorsed on it.

**{¶33}** Upon review, we do not find the mere act of receiving a check, which contained an Ohio address and may or may not have been sent from Ohio, by Appellee in Florida, without evidence of any solicitation or further involvement by Appellee, amounts to "transacting business" in the state of Ohio for purposes of exercising personal jurisdiction over Appellee pursuant to Ohio's long-arm statute.

*Venue*

**{¶34}** Civ.R. 3(C) provides in pertinent part:

Any action may be venued, commenced, and decided in any court in any county. When applied to county and municipal courts, "county," as used in this rule, shall be construed, where appropriate, as the territorial limits of those courts. Proper venue lies in any one or more of the following counties:

(1) The county in which the defendant resides;

(2) The county in which the defendant has his or her principal place of business;

(3) A county in which the defendant conducted activity that gave rise to the claim for relief;

(4) A county in which a public officer maintains his or her principal office if suit is brought against the officer in the officer's official capacity;

(5) A county in which the property, or any part of the property, is situated if the subject of the action is real property or tangible personal property;

(6) The county in which all or part of the claim for relief arose; or, if the claim for relief arose upon a river, other watercourse, or a road, that is the boundary of the state, or of two or more counties, in any county bordering on the river, watercourse, or road, and opposite to the place where the claim for relief arose;

(7) In actions described in Civ.R. 4.3, in the county where plaintiff resides;

(8) In an action against an executor, administrator, guardian, or trustee, in the county in which the executor, administrator, guardian, or trustee was appointed;

****

**{¶35}** Upon review, we find that none of the above factors apply in the instant case.

**{¶36}** While Appellant attempts to argue that venue is proper under (7), we find that said Civ.R. 4.3(A)(1) authorizes out-of-state service of process on a defendant who is "[t]ransacting any business in this state[.]" As Appellee in this matter was not transacting business in Ohio, Civ.R. 4.3(A)(1) is not applicable.

*Breach of Fiduciary Duty*

**{¶37}** No testimony or evidence was presented with regard to what fiduciary duties were owed, if any, and/or how and when said duties were breached.

*Damages*

**{¶38}** Upon review we find Appellant failed to produce any evidence in support of claim for damages. There is no evidence that the Trust suffered any damages as a result of the Florida litigation and resulting settlement.

**{¶39}** In light of the above, we find no error in the trial court's decision directing a verdict in favor of Appellee and dismissing Appellant's action.

**{¶40}** Appellant's assignment of error is overruled.

**{¶41}** For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Gwin, J., concur.

JWW/d 0205