JOURNAL ENTRY and OPINION.
{¶ 1} Plaintiff-appellant Ronald Lewis ("Lewis") appeals the trial court's decision granting defendant-appellee Diehl Auto, Inc.'s ("Diehl") motion to dismiss for lack of personal jurisdiction. We find no merit to this appeal and, therefore, affirm the decision of the trial court.
 {¶ 2} The instant appeal stems from Lewis' purchase of a car that was not properly designated as having a "salvage title." The original owner of the car was Douglass Clark Kiewett, a Michigan resident. After Kiewett "totaled" his car in an accident, he gave the car to his insurance company, Horace Mann Insurance Company ("Horace"), in exchange for a complete payout for the value of the car.
 {¶ 3} Pursuant to Michigan law, when an insurance company pays its insured the value of the car because of the car's significant damage, it is required to collect the title and file it with the Secretary of State for purposes of converting it to a "salvage title." Rather than doing this, Horace allegedly sold the car to Diehl, a Michigan auto company.
 {¶ 4} The car was subsequently sold at a Michigan auction to Express Auto, also a Michigan auto company. After significant repairs were done on the car, it was sold again at a Michigan auction to Zemba Enterprises, Inc., an Ohio company, which then sold the car to Lewis, a resident of Ohio.
 {¶ 5} On October 31, 2001, Lewis filed an amended complaint against Diehl, among other parties, asserting claims for "title skipping," pursuant to federal and Michigan law, "failure to obtain salvage title" under Michigan law, negligence, negligent misrepresentation, fraud, and civil conspiracy. Lewis also sought compensatory damages in excess of $25,000 and punitive damages in the amount of $50 million against Diehl and Horace jointly and severally.
 {¶ 6} In support of these claims, Lewis alleged that Horace and Diehl engaged in a regular practice of buying/selling hundreds of cars that should have been designated as having a "salvage title." He further alleged that Diehl failed to disclose the transfer of ownership on the title of the car at issue in this case pursuant to federal and Michigan law, that Diehl negligently misrepresented and/or concealed the "total loss" condition of the car, and that Diehl fraudulently transferred the title of the car.
 {¶ 7} Diehl filed a motion to dismiss Lewis' claims and, in the alternative, a motion for summary judgment. In its motions, Diehl asserted that the trial court could not exercise personal jurisdiction over it because it was a Michigan company that did not have any property in Ohio, it did not advertise or actively solicit business in Ohio, and it had no offices or sales personnel located in Ohio.
 {¶ 8} Attached to its motion was an affidavit of Diehl's Vice President, Jerry Ingber, wherein he acknowledged that Diehl had purchased $1,000 to $2,000 worth of auto parts annually from Ohio over the past several years and sold an estimated $10,000 worth of auto parts annually to Ohio business customers. However, Diehl argued that given its entire gross receipts of $2 to $3 million, the amount sold to Ohio purchasers constituted less than one-half percent. Diehl contended, therefore, that such a limited amount of business failed to rise to the level necessary to establish minimum contacts with Ohio.
 {¶ 9} In contrast, Lewis argued that Diehl's own affidavit, verifying the transaction of approximately $12,000 in business annually in the State of Ohio is sufficient to demonstrate that it regularly conducted business in Ohio. Lewis further argued that the information he obtained by subpoena of the records from Protech and Copart Auto Auction, two Michigan auction companies, revealed that from 1998 through approximately mid-year 2001, Diehl had sold 32 cars to buyers from Ohio, and that Diehl purchased a total of 30 cars sold by Ohio residents, equaling an estimated combined total of $155,000 worth of transactions. Lewis contended that because Diehl's total business contacts with Ohio exceeded $165,000 and possibly $200,000 over a three-year period, Diehl clearly maintained significant contacts with Ohio and, thus, the trial court should have exercised personal jurisdiction over Diehl.
 {¶ 10} The trial court granted Diehl's motion to dismiss without opinion. Lewis dismissed the other parties to the suit and then filed the instant appeal raising four assignments of error.
 Waiver {¶ 11} In his first assignment of error, Lewis contends that Diehl waived any defects in personal jurisdiction by actively participating in his defense at the trial court. Specifically, Lewis claims that Diehl's action of filing "numerous pleadings and other motions * * * including a motion for summary judgment" constitutes a waiver of any claim for lack of personal jurisdiction.
 {¶ 12} Lewis, however, has waived his right to raise this argument because he failed to present it at the trial court. State ex rel. Martinv. Cleveland (1993), 67 Ohio St.3d 155. But even if Lewis had properly raised and preserved the issue, we find no merit to his argument.
 {¶ 13} Although we acknowledge the holding of several courts that a party's failure to challenge personal jurisdiction at the party's first appearance or, if raised as a defense in an answer, the party's failure to argue jurisdiction sometime prior to appeal, operates as a waiver of the jurisdictional challenge later, we find this holding is inapplicable to the facts of this case. See, e.g., McBride v. Coble Express, Inc.
(1993), 92 Ohio App.2d 505; Continental Bd., N.A., v. Meyer (7th Cir. 1993), 10 F.3d 1293; Yeldell v. Tutt (8th Cir. 1990), 913 F.2d 533.
 {¶ 14} In McBride, the defendant never objected to the jurisdictional authority of the Ohio courts until after the plaintiff's worker's compensation claim was adjudicated and the plaintiff was seeking additional allowance for total disability benefits of the same claim.McBride, supra, at 507-08. Similarly, in Continental, the defendants raised a defense of lack of personal jurisdiction in their answer but waited two and one-half years into the litigation before actually pursuing the defense. Continental, supra, at 1297. Likewise, the defendants in Yeldell also raised a defense of lack of personal jurisdiction in their answer, but waited until appeal before actively pursuing the defense. Yeldell, supra, at 539.
 {¶ 15} Unlike the above cases, the record here reveals that Diehl filed a motion to dismiss in lieu of an answer on April 26, 2001 — less than 60 days after Lewis filed the case. After Lewis amended his complaint, Diehl once again filed a motion to dismiss, incorporating the same arguments it previously raised. From the inception of the lawsuit, Diehl contested the jurisdiction of the court and by no means waived its right to challenge the court's jurisdiction by merely filing a motion for summary judgment.
 {¶ 16} Lewis' first assignment of error is overruled.
 Personal Jurisdiction {¶ 17} Lewis argues in his second, third, and fourth assignments of error that the court incorrectly concluded that it did not have personal jurisdiction over Diehl even though Lewis made a prima facie case that the exercise of personal jurisdiction comported with both the Ohio long-arm statute and due process. We disagree.
 {¶ 18} We review the trial court's ruling granting a motion to dismiss for lack of personal jurisdiction pursuant to a de novo standard of review. McIntyre v. Rice, Cuyahoga App. No. 81339, 2003-Ohio-3490.
 {¶ 19} "Where the defense of lack of personal jurisdiction is asserted, the plaintiff has the burden on the motion to establish the court's jurisdiction." Jurko v. Jobs Europe Agency (1975),43 Ohio App.2d 79, 85, 72 Ohio Op.2d 287, 334 N.E.2d 478; see also,Keybank Nat'l Assn. v. Tawill (1998), 128 Ohio App.3d 451, 455. Where, as here, the court rules on the motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. Compuserve, Inc. v. Patterson (6th Cir. 1996),89 F.3d 1257, 1262. Likewise, the court shall view all allegations in the pleadings and documentary evidence most strongly in Lewis' favor.Goldstein v. Christiansen (1994), 70 Ohio St.3d 232, 236.
 {¶ 20} The determination of whether the court has personal jurisdiction involves a two-step process. "First, the court must determine whether the state's `long-arm' statute and applicable civil rule confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." U.S. Sprint Communications Co. Ltd.Partnership v. Mr. K's Foods, Inc. (1994), 68 Ohio St.3d 181, 183-84.
 {¶ 21} Civ.R. 4.3 and R.C. 2307.382 govern the personal jurisdiction of the Ohio courts. Lewis alleges that personal jurisdiction is proper pursuant to the following sections of R.C. 2307.382:
"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
(1) Transacting any business in this state;
* * *
(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such a person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state."
 {¶ 22} Lewis failed to allege any claim for breach of warranty in his amended complaint, and therefore we decline to consider the application of R.C. 2307.382(A)(5) for purposes of establishing personal jurisdiction. See, Sherry v. Geissler U. Pehr (1995), 100 Ohio App.3d 67. Because Lewis properly alleged claims against Diehl consistent with the other above-referenced provisions of the Ohio long-arm statute, we shall address each in turn.
 (A)(1)-Transacting Any Business {¶ 23} The Ohio Supreme Court has stated that "R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are transacting any business in Ohio."Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc. (1990),53 Ohio St.3d 73, 75. In explaining the meaning of the word "transact" in the context of the statute, the Court stated in pertinent part: "transact * * * means to prosecute negotiations; to carry on business; to have dealings * * *." Id.
 {¶ 24} This court has consistently recognized that when applying R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1), the two-part inquiry described above dissolves into one because the "transacting business clause" was meant to extend the personal jurisdiction of Ohio courts to the federal constitutional limits of due process. Escada Int'l, Inc. v. EurocargoExpress, Cuyahoga App. No. 80761, 2002-Ohio-4035; Records DepositionService, Inc. v. Henderson Goldberg, P.C. (1995),100 Ohio App.3d 495. Thus, the issue is whether Diehl has sufficient contacts with Ohio to make the exercise of jurisdiction over Diehl comport with traditional notions of fair play and substantial justice.Compuserve, Inc. v. Patterson, 89 F.3d at 1263. Three criteria are used to make this determination:
"First, the defendant must purposefully avail himself of the privilegeof acting in the forum state or causing a consequence in the forumstate. Second, the cause of action must arise from the defendant'sactivities there. Finally, the acts of the defendant or consequencescaused by the defendant must have a substantial enough connection withthe forum to make the exercise of jurisdiction over the defendantreasonable."
 In Flight Devices Corp. v. Van Dusen Air, Inc. (6th Cir. 1972),466 F.2d 220, 226.
 {¶ 25} The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state proximately result from actions taken by the defendant that create a substantial connection to the forum. The defendant's conduct and connection to the forum must be such that it may reasonably anticipate being haled into court there.Escada, supra, citing Burger King Corp. v. Ruzewickz (1985), 471 U.S. 462,474-475.
 {¶ 26} Here, we are hesitant to hold that Diehl purposely availed itself of the "privilege of acting" in Ohio. Even though Diehl clearly conducted "some" business in Ohio, this business was extremely insignificant and sporadic in comparison to Diehl's entire operation. See, Busch v. Service Plastics, Inc. (N.D.Ohio 1966), 261 F. Supp. 136
(applying Ohio law because "foreign corporation continuously and not sporadically relied on and benefited from one or more independent sales or service representatives operating in Ohio"). Moreover, Diehl never advertised nor actively solicited any business in Ohio, nor maintained any offices, personnel, property, or bank accounts in Ohio. We find Diehl's contacts failed to rise to the level where it reasonably expected to be haled into an Ohio court.
 {¶ 27} Assuming, arguendo, that Diehl purposefully availed itself of "the privilege of acting" in Ohio, the record clearly demonstrates that its activities in Ohio did not give rise to the instant action. We find that the record fails to reveal any connection between Diehl's limited contacts with Ohio and the instant cause of action. Although Diehl did sell auto parts to Ohio residents, generating an average of $10,000 in sales, and purchased approximately $1,000 to $2,000 worth of auto parts annually, this business activity had no relationship to the car purchased by Lewis. Rather, the record demonstrates that Diehl had a consistent pattern of selling cars in Michigan at Michigan auctions. The fact that Ohio residents and/or Ohio auto companies purchased the cars in Michigan does not support Lewis' contention that Diehl transacted business in Ohio giving rise to the instant claims. In contrast, such facts simply prove Diehl conducted business in Michigan.
 {¶ 28} Finally, we also refuse to hold that Diehl's contacts with Ohio are substantial enough to make the exercise of jurisdiction over it "reasonable." Diehl sold the car in Michigan to a Michigan auto company which, in turn, sold the car in Michigan to an Ohio company. Here, Diehl's connection to Ohio and the actual forum is extremely far removed. Accordingly, we hold that exercising personal jurisdiction over Diehl pursuant to R.C. 2307.382(A)(1) would constitute a violation of its due process rights.
 (A)(4)Tortious Injury by Act Outside State {¶ 29} R.C. 2307.382(A)(4) gives the trial court jurisdiction over Diehl on the facts alleged by Lewis if "* * *[Diehl] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state [.]" See, also, Civ.R. 4.3(A)(4).
 {¶ 30} Lewis argues that Diehl engaged in regular business in Ohio and that Diehl derived substantial revenues from its auto parts and cars purchased by Ohio residents. Under either basis, Lewis argues that personal jurisdiction was proper considering: (1) Diehl's estimated $10,000 annual revenue gained from selling auto parts to Ohio residents, (2) Diehl's estimated $1,000 to $2,000 annual expenditure for auto parts purchased in Ohio, and (3) the combined total of $155,000 stemming from Diehl's sale and purchase of cars to Ohio consumers during a three-year period.
 {¶ 31} We disagree with Lewis' characterization of the facts and its application of R.C. 2307.382(A)(4). Here, although it is undisputed that Diehl collected and/or expended a combined maximum total of $12,000 annually in Ohio, the record also reflects that Diehl's annual gross receipts were between $2 and $3 million. Accordingly, we find $12,000 in business does not warrant a finding that Diehl either conducted regular business or derived substantial revenue from the State of Ohio.
 {¶ 32} Likewise, Lewis' assertion that Diehl transacted an estimated $155,000 in business during a three-year period based on the cars it sold and purchased from Ohio residents is misleading. Although $155,000 worth of business was transacted between Diehl and Ohio residents, the transactions all occurred in Michigan. Additionally, the record does not reflect that Diehl ever directed or targeted any sale of cars toward the State of Ohio or that any part of the $155,000 in sales occurred in Ohio. Accordingly, R.C. 2307.382(A)(4)'s requirement that the "business" or "substantial revenue" be rendered in Ohio is not satisfied in the instant case.
 {¶ 33} Nonetheless, Lewis urges this court to exercise personal jurisdiction under this section based on the holding in Edellstein v.Alfrey, Lucas App. No. L-88-132, 1989 Ohio App. LEXIS 1419, and Hinzmanv. Superior Toyota, Inc. (N.D. W.V. 1987), 600 F. Supp. 401. Contrary to Lewis' assertions, we find Edellstein and Hinzman distinguishable from the instant case.
 {¶ 34} In Edellstein, the foreign defendant, DuShane Sales, contracted to sell a car to a Michigan resident who in turn resold it to an Ohio resident. Id. at *2. DuShane Sales had previously sold cars in Ohio and had been a registered dealer at an Ohio auction for approximately three years. In denying DuShane Sales' motion to dismiss, the court specifically recognized that the sale of the vehicle alone did not sustain an assertion of personal jurisdiction, but that the sale coupled with the defendant's "solicitation of Ohio business contacts and his ongoing business relationship" with the Ohio Auto Auction warranted the exercise of personal jurisdiction. Id. at *8. Unlike DuShane, Diehl has never solicited business in Ohio nor participated in an Ohio auto auction.
 {¶ 35} The instant case is also distinguishable from the facts inHinzman. In Hinzman, the plaintiff was a West Virginia resident, who purchased a car from a West Virginia dealership, which had previously bought the car from a Kentucky auto salesman. Plaintiff brought suit against the dealership and the Kentucky salesman in West Virginia for alleged odometer tampering charges. The court found that it had personal jurisdiction over the Kentucky salesman because it was foreseeable that a West Virginia resident would be tortiously injured by the odometer tampering, and the evidence demonstrated the salesman had previously sold 127 cars to West Virginia car dealers over a four-year period.
 {¶ 36} Unlike Hinzman, Diehl has not sold cars directly to any Ohio dealerships nor has it directed its business activities toward Ohio. Rather, Diehl has sold cars in Michigan at Michigan auctions. Moreover, the chain of title in the instant case is far more removed than in Hinzman. While the defendant in Hinzman sold the car to a West Virginia dealer and, therefore, it was foreseeable the car would be purchased by a West Virginia consumer, Diehl sold Lewis' car to a Michigan auto company.
 {¶ 37} Accordingly, we find that Edellstein and Hinzman do not conflict with the trial court's decision granting Diehl's motion to dismiss.
 (A)(6) Intentional Tortious Injury {¶ 38} The complaint alleges that Diehl engaged in a practice of fraudulently concealing the true condition of cars and failing to designate the cars with a "salvage title" when required. Lewis also alleges that Diehl placed hundreds of cars in the stream of commerce which were purchased by Ohio residents. Accordingly, we find that Lewis has established a prima facie case for personal jurisdiction based on the alleged tortious conduct which Diehl committed in Michigan and its foreseeability of reaching Ohio residents. R.C. 2307.382(A)(6), Civ.R. 4.3(A)(9). Based on our discussion under "transacting business," however, we find that the exercise of personal jurisdiction fails to comport with due process of the Fourteenth Amendment of the United States Constitution. In Flight Devices Corp., supra, at 226.
 {¶ 39} Lewis' second, third, and fourth assignments of error are overruled.
 Motion to Strike {¶ 40} In its cross-assignment of error, Diehl argues that the trial court abused its discretion by not granting its motion to strike Lewis' complaint. Specifically, Diehl argues that Lewis violated Civ.R. 8(A) by demanding $50 million in his complaint and, therefore, the trial court should have stricken the complaint.
 {¶ 41} The trial court's decision denying the motion to strike the complaint pursuant to Civ.R. 12(F) is within its sound discretion and will not be overturned absent an abuse of discretion. Coleman v.Cleveland School Bd. of Ed., Cuyahoga App. Nos. 81674, 81811, 2003-Ohio-880. An abuse of discretion denotes more than an error of law or an error of judgment; it means an action which is unreasonable, arbitrary, or unconscionable. Quonset Hut, Inc. v. Ford Motor Co.
(1997), 80 Ohio St.3d 46, 47.
 {¶ 42} Civ.R. 12(F) motions are disfavored and are ordinarily not granted unless the language in the pleading at issue has no possible relation to the controversy and is clearly prejudicial. Hagins v. EatonCorp. (Mar. 31, 1994), Cuyahoga App. No. 64497, citing, Morrow v. South,540 F. Supp. 1104 (S.D.Ohio 1982); Lirtzman v. Spiegel, Inc.,493 F. Supp. 1029 (N.D.Ill. 1980); 5 Wright Miller, Federal Practice and Procedure Section 1380 (1969). Although Civ.R. 12(F) gives the court discretion to strike entire pleadings, they should not ordinarily be stricken in their entirety, but only those portions which are objectionable. Walton v. Beck, Wyandot App. No. 16-89-15, 1990 Ohio App. LEXIS 5274, citing, Mitchell v. Bendix Corp. (N.D.Ind. 1985),603 F. Supp. 920; Lipsky v. Commonwealth United Corp. (2nd Cir. 1976),551 F.2d 887.
 {¶ 43} Moreover, the Ohio Supreme Court has repeatedly stated that "judicial discretion must be carefully — and cautiously — exercised before this court will uphold an outright dismissal of a case on purely procedural grounds." DeHart v. Aetna Life Ins. Co. (1982),69 Ohio St.2d 189, 192; see, also, Jones v. Hartranft (1997),78 Ohio St.3d 368, 372.
 {¶ 44} Civ.R. 8(A) states in pertinent part:
"A pleading * * * shall contain * * * a demand for judgment for therelief to which the party claims to be entitled. If the party seeks morethan twenty-five thousand dollars, the party shall so state in thepleading but shall not specify in the demand for judgment the amount ofrecovery sought, unless the claim is based upon an instrument required tobe attached pursuant to Civ.R. 10."
 {¶ 45} Here, Lewis' claims against Diehl were not based on any accounts or any other written instrument and, therefore, Civ.R. 10 is inapplicable. Accordingly, we find that Lewis' specific demand for $50 million in his first amended complaint constituted a violation of Civ.R. 8(A). Despite this violation, we do not find the trial court abused its discretion by denying Lewis' motion to strike because the violation alone did not warrant striking the entire complaint, but rather, merely striking that portion of the complaint. Even if the trial court ordered part of the complaint stricken, the trial court would most likely have granted Lewis the opportunity to file an amended complaint correcting the error. Because the trial court granted Diehl's motion to dismiss for lack of personal jurisdiction, an order striking any portion of the complaint was unnecessary.
 {¶ 46} Diehl's cross-assignment of error is overruled.
Judgment affirmed.
Michael J. Corrigan, P.J. and James J. Sweeney, J. Concur