OPINION *Page 2 
{¶ 1} Plaintiff-appellant, National City Commercial Capital Corporation ("National City"), dba and fka Information Leasing Corporation, appeals the decision of the Butler County Court of Common Pleas granting a motion to dismiss its complaints for lack of personal jurisdiction.
 {¶ 2} Originally consolidated under Case No. CA2005-08-219, these 22 cases arose from a similar set of factual circumstances. Defendant-appellee, All About Limousines Corp. dba Anthony's Limousine Service, et al., and 21 other appellees[1] are out-of-state entities and guarantors, if applicable, that entered into lease agreements for telecommunication equipment with NorVergence, Inc. NorVergence assigned its interest in the payments on the lease agreements to Information Leasing Corporation, now National City, and eventually was forced into bankruptcy.
 {¶ 3} National City filed lawsuits against appellees in Butler County, seeking payments owed under the contracts that had been assigned to it. National City averred in its complaints that the trial court had personal jurisdiction over appellees through a forum-selection clause in the lease agreement.
 {¶ 4} Appellees filed motions to dismiss the complaints, alleging the trial court lacked personal jurisdiction over appellees. Without holding a hearing, the trial court granted *Page 3 
appellees' motions. National City instituted this appeal, setting forth three assignments of error.
 {¶ 5} First, we observe that National City had the burden on appellees' motion to establish the court's jurisdiction. See Giachettiv. Holmes (1984), 14 Ohio App.3d 306, 307. Where the trial court did not hold an evidentiary hearing, it was required to view allegations in the pleadings and documentary evidence in a light most favorable to National City, resolving all reasonable competing inferences in its favor. SeeGoldstein v. Christiansen, 70 Ohio St.3d 232, 236, 1994-Ohio-229. In the absence of a hearing, National City had only to make a prima facie case to demonstrate jurisdiction in order to defeat a motion to dismiss.Interior Servs., Inc. v. Iverson, Hamilton App. No. C-020501, 2003-Ohio-1187, ¶ 7. We review the trial court's ruling granting a motion to dismiss for lack of personal jurisdiction pursuant to a de novo standard of review. McIntyre v. Rice, Cuyahoga App. No. 81339, 2003-Ohio-3490.
 {¶ 6} We will combine for our discussion National City's first two assignments of error. Under these two assignments, National City argues that the trial court erred in dismissing the case for lack of personal jurisdiction because the forum-selection clause in the agreement did not violate Ohio law per se and was enforceable as it was not the product of fraud or overreaching, nor unjust or unreasonable.
 {¶ 7} Parties to a contract may agree to submit to the jurisdiction of a particular court through the use of a forum-selection clause, thereby waiving the requirement that the court have personal jurisdiction over the parties. See National City Commercial Capital Corp. v. GatewayPacific Contractors, Inc. (S.D.Ohio Oct. 31, 2007), No. 1:4cv669.
 {¶ 8} The clause at issue in the agreements before the court herein states: "*** This agreement shall be governed by, construed and enforced in accordance with the laws of the State in which Rentor's principal offices are located or, if this Lease is assigned by Rentor, the State in which the assignee's principal offices are located, without regard to such State's *Page 4 
choice of law considerations and all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within that State, such court to be chosen at Rentor or Rentor's assignee's sole option. * * *."
 {¶ 9} In granting the motions to dismiss, the trial court cited the following three-part test from Kennecorp Mtg. Brokers, Inc. v. CountryClub Convalescent Hosp., Inc., 66 Ohio St.3d 173, 1993-Ohio-203, to determine the validity of a forum-selection clause: (1) Are both parties to the contract commercial entities? (2) Is there evidence of fraud or overreaching? (3) Would enforcement of the clause be unreasonable or unjust?
 {¶ 10} The trial court indicated in its decision granting the motions to dismiss that there was no evidence that the forum-selection clause "by it itself" was the result of fraud, and that determination does not appear to be contested here.
 {¶ 11} The trial court also stated that the Ohio Supreme Court had not addressed whether a forum-selection clause "that in no way identifies the ultimate forum, but leaves it to some possible future occurrence that is unknown to at least one of the contracting parties at the time, is against public policy or unreasonable or unjust for that reasonalone." (Emphasis sic.)
 {¶ 12} The trial court cited several federal or out-of-state cases that found unreasonable or unjust forum-selection clauses that did not identify the ultimate forum or specify a particular state forum. The trial court subsequently concluded that the forum-selection clause at issue was against public policy and should not be enforced.
 {¶ 13} The trial court found "an additional reason" why the clause should not be enforced, finding that enforcement of the forum-selection clause at issue would be unreasonable and unjust because the cost and inconvenience for the "relatively small business[es]" of litigating "in another state" as opposed to their home state where pertinent witnesses are located was "considerable and could quite likely deprive the defendant[s] of a *Page 5 
meaningful day in court."
 {¶ 14} The trial court issued its decision and entry July 14, 2005, and the case has been involved in the appellate process since that time. In 2007, the Ohio Supreme Court released its decision in PreferredCapital, Inc. v. Power Engineering Group, Inc., 112 Ohio St.3d 429,2007-Ohio-257, which dealt with the issue of personal jurisdiction for cases in which assignees of NorVergence leases filed suit against businesses based on leases with similar, if not the same, floating forum-selection clause.
 {¶ 15} The Ohio Supreme Court, also relying on the three-part test from Kennecorp, held that a forum selection clause in a contract between two commercial entities with no reference to a specific jurisdiction is valid absent a finding of fraud or overreaching or a finding that enforcement of the clause would be unreasonable or unjust, and a forum selection clause may be held to be unreasonable if it would be against public policy to enforce it. Preferred Capital, paragraphs one and two of syllabus.
 {¶ 16} The Ohio Supreme Court rejected the argument made in its case that the defendants, described as "mom and pop" small businesses, should not be considered sophisticated commercial entities presumed to have some experience in contractual and business matters. Id. at ¶ 8. Further, the Ohio Supreme Court found no evidence the forum selection clause in its case was agreed to as the result of fraud or overreaching. Id. at ¶ 9.
 {¶ 17} However, the Court held when one party to a contract containing a floating forum-selection clause possesses undisclosed information of its intent to assign its interest in the contract almost immediately to a company in a foreign jurisdiction, the forum-selection clause is unreasonable and against public policy absent a clear showing that the second party knowingly waived personal jurisdiction and assented to litigate in any forum. Id. at ¶ 16.
 {¶ 18} The Court referred to a "Master Program Agreement" previously entered into between Preferred Capital, plaintiff in that case, and NorVergence. This Master Program *Page 6 
Agreement, in the majority's opinion, was evidence of the "superior information" or "superior knowledge" on the part of Preferred Capital and NorVergence that the leases would likely be assigned, and this information was withheld from the defendants in that case. Id. at ¶ 3, 13-14.
 {¶ 19} The Ohio Supreme Court stated, "Nothing in the record indicates that [the defendants] were fully apprised of the potential for a truly floating forum. The record indicates that NorVergence knew that it intended to assign these leases and that no matter how carefully [the defendants] read the contract, they could never have anticipated the appropriate forum for litigating issues related to their leases." Id. at ¶ 12.
 {¶ 20} "Based upon the strong public policy of not haling individuals into foreign jurisdictions without their knowing waiver, and the superior knowledge and position of NorVergence and Preferred Capital in comparison to [the defendants], we hold this forum-selection clause unreasonable, and it would be unjust to enforce it." Id. at ¶ 14.
 {¶ 21} The Ohio Supreme Court in Preferred Capital did not repudiate floating forum-selection clauses; however, it found an undisclosed prior agreement, the Master Program Agreement, integral to its rejection of this floating forum-selection clause because the plaintiff had "superior knowledge," and there was no "clear showing of assent to litigate in any forum" by the defendants. Obviously, the trial court in the instant case did not have the benefit of the Ohio Supreme Court's decision inPreferred Capital and the existence and significance of a Master Program Agreement was not fully explored in the case at bar.[2]
 {¶ 22} As we previously noted, the trial court found a second reason to invalidate the forum-selection clause based upon its determination that litigating in a state other than their *Page 7 
home state would involve considerable cost and inconvenience to appellees and "likely deprive" them of a meaningful day in court.
 {¶ 23} The Ohio Supreme Court in Preferred Capital stated that it was not persuaded that litigating a claim in Ohio would be any more burdensome for the out-of-state defendants than litigating a claim in New Jersey [location of NorVergence's principal offices], or that requiring the parties to litigate in Ohio would deprive them of their day in court. Power Engineering Group at ¶ 11.
 {¶ 24} In other words, contrary to the trial court's determination in the instant case, the Ohio Supreme Court did not find that the defendants would be deprived of their day in court by having to litigate in a state other than their home state, because the forum-selection clause indicated that the forum would be the state for NorVergence's offices, if the interest had not been assigned.[3]
 {¶ 25} We sustain National City's combined assignments of error only to the extent that we find the trial court erred in granting appellees' motion to dismiss for lack of personal jurisdiction in reference to the determination that the forum-selection clause was against public policy and unreasonable without exploring the "superior knowledge," if any, on the assignment of the lease payments.
 {¶ 26} We reverse the trial court's determination and remand this matter to the trial court to consider issues in accordance with the decision of the Ohio Supreme Court in Preferred Capital. On remand, the trial court should consider: the existence of and execution date for a Master Program Agreement between NorVergence and National City or Information Leasing Corporation, the circumstances related to the assignment of lease *Page 8 
payments, appellees' knowledge, if any, of the Master Program Agreement and their assent to litigate in any forum, and the burden, if any, to those appellees with offices in New Jersey. See, generally, Dobos v.Dobos, Clermont App. No. CA2007-11-108, 2008-Ohio-5665.
 {¶ 27} National City argues under its third assignment of error that the trial court erred in dismissing the action for lack of personal jurisdiction when appellees transacted business in Ohio by mailing one or more payments to National City at its office in Ohio.
 {¶ 28} When determining whether a state court has personal jurisdiction over a nonresident defendant, the court is obligated to (1) determine whether the state's "long-arm" statute and the applicable Civil Rule confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. U.S. Sprint Communications Co., Ltd.Partnership v. Mr. K's Foods, Inc., 68 Ohio St.3d 181, 183-184,1994-Ohio-504; Dobos at ¶ 13 (due process clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which that individual has established no meaningful contacts, ties, or relations).
 {¶ 29} The complementary provisions of Ohio's "long-arm" statute, R.C. 2307.382(A)(1), and Civ. R. 4.3(A)(1), authorize a court to "exercise personal jurisdiction over a nonresident defendant and provides for service of process to effectuate that jurisdiction when the cause of action arises from the nonresident defendant's `transacting any business in this state.'" Goldstein v. Christiansen, 70 Ohio St.3d at 235-236.
 {¶ 30} Both the statute and the rule are broadly worded and permit jurisdiction over any nonresident defendant who is transacting any business in Ohio. Kentucky Oaks Mall Co. v. Mitchell's Formal Wear,Inc. (1990), 53 Ohio St.3d 73, 75.
 {¶ 31} To "transact" means to prosecute negotiations," "to carry on business," "to have dealings." Id. Whether a defendant has transacted any business in Ohio is a case-by-case *Page 9 
determination. U.S. Sprint at 185.
 {¶ 32} The "constitutional touchstone" is whether the nonresident defendant purposely established contacts in the forum state such that the defendant should reasonably anticipate being haled into court in that state. Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462,474-475, 105 S.Ct. 2174 (the nonresident defendant has purposefully established minimum contacts where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state, where defendant deliberately engaged in significant activities within a state, or has created continuing obligations between himself and residents of the forum, where he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by `the benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well); Kentucky Oaks Mall at 77.
 {¶ 33} The Due Process Clause of the Fourteenth Amendment mandates that a court exercise jurisdiction only if the defendant has sufficient minimum contacts with the state so that summoning the party to Ohio would not offend the "traditional notions of fair play and substantial justice." U.S. Sprint at 186, citing Internatl. Shoe Co. v.Washington (1945), 326 U.S. 310, 316, 66 S.Ct. 154; Burger King at 477 (whether the assertion of personal jurisdiction would comport with "fair play and substantial justice," courts in appropriate cases may evaluate such factors as the burden on defendant, forum state's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, and interstate judicial system's interest in obtaining the most efficient resolution of controversies).
 {¶ 34} National City argues that Ohio's long-arm statute confers personal jurisdiction and the grant of jurisdiction would not deprive appellees of their right to due process of law because appellees made one or more payments to Ohio after the assignment and when they ceased making payments, the resulting breach of contract occurred in Ohio. *Page 10 
 {¶ 35} The previously cited case of Kentucky Oaks is instructive on this issue as that case involved a lease contract between an out-of-state company and an Ohio lessor for property outside of Ohio.
 {¶ 36} The Kentucky Oaks court found an Ohio court had personal jurisdiction because the appellee intentionally and voluntarily entered into negotiations over the telephone for a lease with the Ohio entity and was obligated to make payments to this entity in Ohio. In addition to the rental payments, the ten-year lease required appellee to submit maintenance costs, association fees, and sales reports to the Ohio entity, and restricted or regulated many activities, with some matters requiring additional approval from the Ohio entity. The court found that the appellee "purposefully directed activities at an Ohio-based limited partnership so that it could reasonably anticipate being haled into an Ohio court" and the assertion of jurisdiction comports with "fair play and substantial justice." Id. at 77.
 {¶ 37} The facts of the Kentucky Oaks case are helpful to our determination because the record herein does not indicate that appellees initiated the negotiations with National City in Ohio. The nature of the contract, the contacts and the interactions enumerated in theKentucky Oaks case were more extensive than what transpired in the instant case.
 {¶ 38} After applying the applicable standard of review, we find that appellees did not purposefully avail themselves of the privilege of acting in Ohio and were not transacting business as provided under R.C. 2307.382 and Civ. R. 4.3(A)(1), based upon making payments on the lease agreement.
 {¶ 39} Making payments and ceasing to make payments on the assigned agreement did not result in connections to Ohio so substantial that appellees could have reasonably anticipated being haled into an Ohio court, and we do not find that appellees had sufficient contacts to make the exercise of jurisdiction comport with traditional notions of "fair play and substantial justice." See National City Bank v. Yevu,178 Ohio App.3d 382, 2008-Ohio-4715; *Page 11 
see Nationwide Life Ins. Co. v. Hampton Supply, Inc. (S.D.Ohio 1993),829 F.Supp. 915, 917-918 (in applying Ohio's long-arm statute, plaintiff failed to establish that defendant purposely availed itself of privilege of acting in forum state where, with the exception of the mailing of checks to plaintiff in Ohio, all other acts on the defendant's part in connection with the contract occurred in Maryland; where arguably the alleged breach occurred in Ohio by failure to remit payment, fairness would not be served by court's exercise of personal jurisdiction over the defendant).
 {¶ 40} Sending one or more payments to Ohio did not invoke the jurisdiction of the court in this case, and the trial court did not err in its determination. National City's third assignment of error is overruled.
 {¶ 41} Accordingly, the judgment of the trial court is affirmed in part, and reversed in part and remanded for further proceedings in accordance with the law and the decision of this court.
BRESSLER and YOUNG, JJ., concur.
[1] The other appellees in this case are: S S Overseas, Inc. and Gustovo Socorro — CA2005-08-232; Bee Electrical, Inc. and Jimmy D. Davis — CA2005-08-239; Watson Cochran, Inc. and Kyle R. Cochran — CA2005-08-253; The Caddy Company and David E. Krugler — CA2005-08-259; Max Impressions, Inc. and John A. Murphy — CA2005-08-270; Henry J. Austin Health Center, Inc. — CA2005-08-277; Holleman Construction Company and Chris Holleman — CA2005-08-280; The Woodland Competitive Basketball League, Inc. and Charles Koenig — CA2005-08-283; Management Recruiters Garland, Inc. and Thomas J. Hern — CA2005-08-295; Colonial Wood Training Center and Joshua Quintus — CA2005-08-314; Masterson Appraisal Service, Inc. and Martin Masterson — CA2005-08-317; Steico USA, Corporation and Judah D. Stein — CA2005-08-327; Specialized Cargo Haulers, Inc. and Randy M. Graves — CA2005-08-335; Stuart Appraisal Company, Inc. and James Stuart — CA2005-08-336; National Outsource Warehouse, LLC and Jason T. Selman — CA2005-08-337; N-Line Traffic Maintenance, LP — CA2005-08-341; Reynolds Tile Flooring, Inc. — CA2005-08-345; Poltex Tile, Inc. and Leszek Grabowski — CA2005-08-352; Performance Pulsation Control, Inc. — CA2005-10-448; SAL Electric Company, Inc. and Philip A. Chianetta — CA2005-10-459; and Service Supply of Victoria, Inc. — CA2005-10-460.
[2] We note that a document referencing, but not explaining, a 2003 Master Program Agreement between Information Leasing Corporation nka National City, and NorVergence was attached to a responsive pleading or motion of National City in approximately 12 of the cases herein.
[3] The Supreme Court observed that none of the defendants in its case had offices in New Jersey, so litigation would take place in a foreign state in any event. We note that seven of the appellees herein have their offices in New Jersey. *Page 1