## TOTAL QUALITY LOGISTICS

v.

## BEST PLASTICS, L.L.C.

2010-Ohio-3190.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2009 CVH 02515.

Decided April 30, 2010.

---

10. *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393.

Lindhorst & Dreidame Co., L.P.A., and Barry F. Fagel, for plaintiff.

Dinsmore & Shohl, L.L.P., Peter J. Georgiton, and Kurt R. Hunt, for defendant.

---

McBRIDE, Judge.

{¶ 1} This cause is before the court for consideration of a motion to dismiss for lack of personal jurisdiction filed by the defendant, Best Plastics, L.L.C.

{¶ 2} The court scheduled and held a hearing on the motion to dismiss on March 29, 2010. At the conclusion of the hearing, the court took the issues raised by the motion under advisement.

{¶ 3} Upon consideration of the motion to dismiss, the record of the proceeding, the evidence presented for the court's consideration, the oral and written arguments of counsel, and the applicable law, the court now renders this written decision.

## FACTS OF THE CASE

{¶ 4} The court sets forth the facts of the present case as follows in conformance with the Civ.R. 12(B)(2) standard and for the purposes of the present motion only:

{¶ 5} The plaintiff, Total Quality Logistics ("TQL"), filed the present action against Best Plastics for breach of contract and unjust enrichment. TQL, a limited liability company located in Clermont County, Ohio, locates trucks to transport goods for its clients. Best Plastics is a plastics products manufacturer and limited liability company with a principal place of business in Englewood, New Jersey and additional operations in McDonough, Georgia.

{¶ 6} John Bailey, the distribution manager for Best Plastics, avers that he was approached by a TQL representative in 2009, who inquired as to whether Best Plastics had any open shipping lanes for which TQL could provide trucking brokerage services. After indicating that Best Plastics did indeed have open shipping lanes, TQL provided Bailey with a credit application to fax back to TQL, and Bailey forwarded that application to Best Plastics' New Jersey headquarters for completion. Best Plastics did in fact fax the completed credit application to TQL, and subsequently, TQL brokered approximately 95 loads for Best Plastics. That credit application does not mention the state of Ohio.

{¶ 7} TQL generally solicited the defendant's business via email, and Best Plastics requested TQL's services by emailing or calling Danny Messer at one of three telephone numbers. The defendant mailed five checks to TQL's Clermont County headquarters for partial payments toward its credit balance.

{¶ 8} On its credit application with TQL, the defendant listed several companies as credit references, including Ashland Chemical, whose address it lists as Doraville, Georgia, and Woodford Logistics, which is located in South Charleston, Ohio. Two employees of Best Plastics aver in their affidavits that, while Best Plastics had purchased resin from Ashland Chemical on one or two occasions, it primarily dealt with Ashland Chemical's facility located in Georgia. Additionally, those affiants state that while the defendant has purchased pallets from Woodford Logistics, it dealt with that company's facility located in Atlanta, Georgia, and the pallets were manufactured at and shipped from that Georgia location.

{¶ 9} The plaintiff also presented evidence that the website for Best Plastics directs those who access it to the website for The Home Depot, a company that does business in all 50 states. In response, Best Plastics offers two affidavits that state that while Best Plastics has sold items to The Home Depot, its communications with that company have been directed to its Georgia headquarters, and The Home Depot picked up the items it purchased from the defendant at Best Plastics' Georgia facility.

{¶ 10} TQL states in the first paragraph of its complaint that "[t]his Court has jurisdiction over the Defendant because the Defendant has transacted business in the State of Ohio, has regularly engaged in a persistent course of conduct in the State of Ohio, and/or has sufficient minimum contacts in this state for the Court to exercise jurisdiction."

{¶ 11} In contrast, Best Plastics now moves this court to dismiss the present action for lack of personal jurisdiction. Best Plastics denies that it had sufficient minimum contacts with Ohio or a persistent course of business conducted in Ohio and notes that it is not registered to do business in Ohio, nor does it have any offices, employees, business operations, or property in the state of Ohio. Best Plastics also states that, while TQL did broker shipments between McDonough,

Georgia and such states as Arizona and New Jersey, at no point did TQL provide shipping services for Best Plastics to or from anywhere in Ohio.

## LEGAL ANALYSIS

{¶ 12} Best Plastics moves this court to dismiss the present action pursuant to Civ.R. 12(B)(2), which permits such a motion for "lack of jurisdiction over the person."

{¶ 13} The plaintiff has the burden on a defendant's motion to dismiss for lack of personal jurisdiction to establish that the court does have such jurisdiction.[1] When a trial court does not hold an evidentiary hearing, it is required to view allegations in the pleadings and documentary evidence in a light most favorable to the plaintiff, resolving all reasonable competing inferences in the plaintiff's favor.[2] In the absence of an evidentiary hearing, the plaintiff must make a prima facie showing of personal jurisdiction to defeat the motion to dismiss.[3]

{¶ 14} "When determining whether a state court has personal jurisdiction over a foreign corporation the court is obligated to engage in a two-step analysis. First, the court must determine whether the state's 'long-arm' statute and applicable civil rule confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution."[4]

{¶ 15} Ohio's long-arm statute is codified as R.C. 2307.382 and reads: "(A) A court may exercise personal jurisdiction over a person who acts directly or by an

1. *Natl. City Commercial Capital Corp. v. All About Limousines Corp.* (Mar. 16, 2009), 12th Dist. Nos. CA2005–08–226, CA2005–08–232, CA2005–08–239, CA2005–08–253, CA2005–08–259, CA2005–08–270, CA2005–08–277, CA2005–08–280, CA2005–08–283, CA2005–08–295, CA2005–08–314, CA2005–08–317, CA2005–08–327, CA2005–08–335, CA2005–08–336, CA2005–08–337, CA2005–08–341, CA2005–08–345, CA2005–08–352, CA2005–10–448, CA2005–10–459, and CA2005–10–460, 2009-Ohio-1159, 2009 WL 683786, ¶ 5, citing *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 307, 14 OBR 371, 471 N.E.2d 165.

2. Id., citing *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 236, 638 N.E.2d 541.

3. Id., citing *Interior Servs., Inc. v. Iverson* , 1st Dist. No. C–020501, 2003-Ohio-1187, 2003 WL 1093982, ¶ 7. See also *Buflod v. Von Wilhendorf, L.L.C.*, 12th Dist No. CA2006–02–022, 2007-Ohio-347, 2007 WL 210790, ¶ 10, citing *Yauger v. Hamilton Sorter Co.* (Oct. 18, 1993), 12th Dist. No. CA93–02–030, 1993 WL 414183.

4. *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048, citing, e.g., *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 559 N.E.2d 477.

agent, as to a cause of action arising from the person's: (1) Transacting business in this state." Similarly, Civ.R. 4.3(A)(1) provides:

> Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
>
> (1) Transacting any business in this state.

{¶ 16} TQL asserts that the defendant has transacted business in Ohio based on the business dealings between the two companies whereby Best Plastics requested that TQL provide shipping logistics service for approximately 95 loads.

{¶ 17} The Ohio Supreme Court has recognized that both "R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are *transacting any* business in Ohio."[5]

> "Transact," as defined by Black's Law Dictionary (5 Ed.1979) 1341, " * * * means to prosecute negotiations; to carry on business; to have dealings * * *. The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word "contract" and may involve business negotiations which have been either wholly or partly brought to a conclusion * * *."[6]

However, " 'a nonresident's ties must "create a 'substantial connection' " ' with Ohio to find personal jurisdiction exists under R.C. 2307.382(A)(1)."[7] "Where a non-resident defendant contracts with an Ohio resident to create an ongoing business relationship, such defendant is 'transacting any business' in Ohio pursuant to the plain meaning of R.C. 2307.382(A)(1)."[8] "Whether a defendant has transacted any business in Ohio is a case-by-case determination."[9]

---

5. *Kentucky Oaks*, 53 Ohio St.3d at 75, 559 N.E.2d 477.

6. Id.

7. *Buflod*, 2007-Ohio-347, 2007 WL 210790, at ¶ 12, quoting *U.S. Sprint*, 68 Ohio St.3d at 185, 624 N.E.2d 1048.

8. Id., citing *Kentucky Oaks*, 53 Ohio St.3d at 76, 559 N.E.2d 477.

9. *All About Limousines*, 2009-Ohio-1159, 2009 WL 683786, at ¶ 31, citing *U.S. Sprint* at 185, 624 N.E.2d 1048.

{¶ 18} Two factors are helpful in determining whether a foreign corporation transacted business in Ohio within the meaning of the long-arm statute. "The first factor is whether the non-resident defendant initiated the business dealing."[10] Logically, if the foreign corporation reached out to the Ohio corporation to create the business relationship, that is one factor that would go toward finding that the nonresident transacted business in Ohio.[11] "The balance of the evidence must be considered to determine in which jurisdiction the parties undertook their discussions and communications and on what terms."[12] "The second factor to be considered is whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio."[13] There must additionally be some continuing obligation that connects the nonresident defendant to the state or some terms of the agreement that affect the state.[14]

{¶ 19} There is no dispute that TQL approached Best Plastics and originally solicited its business. Therefore, Best Plastics did not initiate its relationship with TQL, and that factor weighs against a finding that the defendant transacted business in Ohio.

{¶ 20} The facts of the case sub judice are unusual due to the service provided by TQL to its clients, including the defendant Best Plastics. TQL provided brokerage services to Best Plastics whereby it found available trucks to transport shipments of Best Plastics' products. The service rendered by TQL, namely a TQL broker finding an available truck, was performed by TQL employees at its headquarters in Ohio. However, the subject matter of the transaction, the shipments of goods manufactured by Best Plastics, occurred outside Ohio, as Best Plastics ships its products to several states, but not to Ohio. The credit application was completed by Best Plastics in Georgia and faxed to TQL in Ohio. While TQL, an Ohio company, extended credit to Best Plastics, there is no evidence of any negotiations occurring in Ohio or of the terms affecting Ohio, other than the fact that TQL is an Ohio company and was extending a line of credit.

---

10. *Specialized Mach. Hauling & Rigging, L.L.C. v. D & L Transport, L.L.C.* (Apr. 20, 2009), S.D.Ohio No. 3:08–CV–445, 2009 WL 1045908, *6, citing *Paglioni & Assoc., Inc v. Winner-Comm, Inc.* (Mar. 16, 2007), S.D. No. 2:06–CV–276, 2007 WL 852055, *9.

11. Id.

12. Id., citing *Ricker v. Fraza/Forklifts of Detroit*, 160 Ohio App.3d 634, 2005-Ohio-1945, 828 N.E.2d 205.

13. Id., citing *Shaker Constr. Group, L.L.C. v. Schilling* (Sept. 18, 2008), S.D.Ohio No. 1:08CV278, 2008 WL 4346777, *3.

14. Id., citing *Kentucky Oaks*, 53 Ohio St.3d at 76, 559 N.E.2d 477.

{¶ 21} The credit application, which is the contract at issue in the breach-of-contract claim, is not the only consideration here, however. Best Plastics did request TQL's services for 95 different loads over the course of approximately four months. To do so, Best Plastics would contact a TQL representative via telephone or email and request that TQL find an available truck.

{¶ 22} In *Buflod*, 2007-Ohio-347, 2007 WL 210790, ¶ 3–4, an Ohio resident contracted to purchase three dogs from a Connecticut corporation and sued that company when he received the dogs and found each to have health problems.[15] The parties negotiated the purchases via numerous telephone calls and emails, and the contracts were executed and sent via facsimile.[16] The appellate court noted that these were three isolated sales that did not create an ongoing business relationship with the Ohio resident.[17] The court also noted that the defendant had never sold any other dogs in Ohio, did not solicit business in Ohio, and neither owned property nor maintained a statutory agent in this state. The court concluded that the trial court lacked personal jurisdiction pursuant to the long-arm statute.[18]

{¶ 23} In *Alpha Telecommunications, Inc. v. ANS Connect* (June 19, 2008), 8th Dist. No. 90173, 2008-Ohio-3069, 2008 WL 2487248, ¶ 1–2, an Ohio consulting firm entered into a contract to provide consulting services to a Georgia corporation. The contract negotiations took place via telephone, and the defendant sent work to the plaintiff by fax, regular mail, or email.[19] The defendant did not initiate the initial contact between the parties, and it signed the contract in Georgia and faxed it to Ohio after the plaintiff solicited its business.[20] The appellate court noted that the plaintiff had "merely provided information to [the defendant]" and had no say in the defendant's out-of-state business transactions between the defendant and its customers.[21] The court concluded that there was no personal jurisdiction over the defendant under the Ohio long-arm statute because the defendant did not initiate the contract, but instead simply forwarded matters to

---

15. *Buflod,* 2007-Ohio-347, at ¶ 3.

16. Id. at ¶ 3.

17. Id. at ¶ 14.

18. Id.

19. Id. at ¶ 13–14.

20. Id. at ¶ 16.

21. Id. at ¶ 22.

be reviewed via fax, mail, or email, and the plaintiff returned the completed work via the same means.[22]

{¶ 24} In the case of *Natl. Court Reporters, Inc. v. Rebecca N. Strandberg & Assoc.*, 8th Dist. No. 92035, 2009-Ohio-2271, 2009 WL 1346641, ¶ 1, the plaintiff was an Ohio corporation that contracted with the defendant, a Maryland corporation, to perform court reporting and litigation services. While setting up court-reporting services for depositions to be held in Maryland and Kansas, the parties exchanged several telephone calls and faxes.[23]

{¶ 25} The appellate court held that such communications were sufficient to find that the defendant transacted business in Ohio within the meaning of the long-arm statute.[24] In making its ruling, the court set forth the following discussion:

> Regardless of whether [the defendant] knew that it was dealing with an Ohio company, the fact remains that it did "transact" business within this state under the broad definition used in *Kentucky Oaks*. The parties entered into negotiations for court reporter and litigation support services, they reached an agreement on those services, and they memorialized their contract with faxes and telephone calls. [The defendant] sent a payment to [the plaintiff's] address. These were not one-time events, but part of a month-long course of dealing in which [the plaintiff] provided court reporter services on several occasions and for multiple depositions scheduled both in Maryland and in Kansas. These acts were 'business negotiations' and thus constituted 'transacting any business' for purposes of R.C. 2307.382(A)(1).[25]

{¶ 26} These facts of both *Alpha Telecommunications* and *Natl. Court Reporters* are somewhat similar to the facts presented in the case at bar, yet those two cases reach different conclusions as to jurisdiction under the long-arm statute. While affiants for the defendant aver that they did not know that TQL is an Ohio corporation, that fact is irrelevant to the present analysis of application of the long-arm statute. What is relevant is that, for a period of four months, Best Plastics contacted TQL via telephone or email 95 times to request TQL's brokerage services. While the brokerage services were for shipments being made from Georgia to states other than Ohio, the court-reporting services at

---

22. Id. at ¶ 23.

23. *Natl. Court Reporters*, 2007-Ohio-2271, at ¶ 6–7.

24. Id. at ¶ 8.

25. Id.

issue in *Natl. Court Reporters* were also not to be performed in Ohio, but were instead performed in Maryland and Kansas.

{¶ 27} Construing the long-arm statute's use of "transacting business in Ohio" broadly, the court finds that TQL has made a prima facie showing that Ohio's long-arm statute applies in the present case to confer jurisdiction over Best Plastics.

{¶ 28} Having found that TQL has met its burden under the long-arm statute, this court must now advance to the second prong of the analysis to determine personal jurisdiction: whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law.

{¶ 29} "The United States Supreme Court has held that in order for a state court to subject a foreign corporation to a judgment *in personam*, the corporation must 'have certain minimum contacts with [the state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' "[26] "In formulating this rule, the United States Supreme Court emphasized that the analysis 'cannot simply be mechanical or quantitative,' but rather whether due process is satisfied depends 'upon the quality and nature of the activity.' "[27] "Under the *International Shoe* doctrine, a nonresident corporation submits to a state's personal jurisdiction when the activities of the company within the state are systematic and continuous."[28] "Thus where the defendant 'deliberately' has engaged in significant activities within a State * * *, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."[29]

{¶ 30} " 'Minimum contacts' is defined as conduct that requires a substantial connection to the forum state, that creates continuing obligations between a defendant and a resident of the forum state, or that mandates conducting significant activities within a forum state."[30] A nonresident should not

---

26. *U.S. Sprint*, 68 Ohio St.3d at 186, 624 N.E.2d 1048, quoting *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95.

27. Id., quoting *Internatl. Shoe* at 319, 66 S.Ct. 154, 90 L.Ed. 95.

28. Id., quoting *Internatl. Shoe* at 319, 66 S.Ct. 154, 90 L.Ed. 95.

29. Id. at 187, 624 N.E.2d 1048, quoting *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 475–476, 105 S.Ct. 2174, 85 L.Ed.2d 528.

30. *Century Marketing Corp. v. Aldrich*, 6th Dist. No. WD–02–045, 2003-Ohio-1390, 2003 WL 1447158, ¶ 12, citing *Hercules Tire & Rubber Co. v. Murphy* (1999), 133 Ohio App.3d 97, 101, 726 N.E.2d 1080.

be subject to the jurisdiction of a foreign court based upon random, fortuitous, or attenuated contacts.[31]

█ {¶ 31} "As a general rule, the use of interstate lines of communication such as mail services, facsimiles, and telephones is not automatically a purposeful availment of the privileges of conducting commerce in a forum state such that the nonresident should anticipate being haled into court there."[32]

█ {¶ 32} "The Due Process Clause permits a court to obtain either general or specific jurisdiction over a non-resident defendant."[33] "Specific jurisdiction exists when a plaintiff's cause of action is related to, or arises out of, the defendant's contact with the forum state. Conversely, general jurisdiction exists when a court exercises personal jurisdiction over a defendant in a cause of action that does not arise out of or relate to the defendant's contacts with the forum state."[34]

{¶ 33} "For a court to exercise general jurisdiction over a non-resident defendant, that defendant must have 'continuous and systematic' contacts with the forum state."[35]

{¶ 34} In the case at bar, the plaintiff makes much of the two Ohio companies listed as references on Best Plastics' credit application. However, the unrebutted evidence in the defendant's affidavits demonstrates that such contacts were minimal, isolated, and random. Furthermore, the affidavit evidence demonstrates that Best Plastics' contacts with The Home Depot, a national chain, do not demonstrate that products made by Best Plastics were ever shipped to Ohio. Additionally, the court does not find the contacts between Best Plastics and TQL regarding the 95 shipments in the four months at issue to be continuous, systematic contacts that would provide general jurisdiction.

---

**31.** Id. at ¶ 19, citing *Hack v. Fisher–Bord Worldwide Moving*, 9th Dist. No. 20914, 2002-Ohio-3863, 2002 WL 1758384, citing *Burger King*, 471 U.S. at 475–476, 105 S.Ct. 2174, 85 L.Ed.2d 528.

**32.** Id. at ¶ 17, citing *Fritz–Rumer–Cooke Co., Inc. v. Todd & Sargent* (Feb. 8, 2001), 10th Dist. No. 00AP–817, 2001 WL 102267. See also *Epic Communications v. ANS Connect* (July 17, 2008), 8th Dist. No. 90364, 2008-Ohio-3548, 2008 WL 2766285, ¶ 12.

**33.** *Parshall v. PAID, Inc.*, 10th Dist. No. 07AP–1019, 2008-Ohio-3171, 2008 WL 2553098, ¶ 23, citing *Helicopteros Nacionales de Colombia v. Hall* (1984), 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404.

**34.** Id., citing *Joffe v. Cable Tech, Inc.*, 163 Ohio App.3d 479, 2005-Ohio-4930, 839 N.E.2d 67, ¶ 27.

**35.** *Parshall* at ¶ 27, citing *Helicopteros* at 416, 104 S.Ct. 1868, 80 L.Ed.2d 404.

{¶ 35} "Specific personal jurisdiction is established when (1) the non-resident defendant has purposefully availed itself of the privilege of conducting activities in the forum state; (2) the plaintiff's claims arise out of those activities directed at the forum state; and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."[36]

{¶ 36} In *Buflod*, the court found that there were no minimum contacts with Ohio such that the defendant should have reasonably anticipated being haled into court here.[37] The court noted that the sales of three dogs to an Ohio resident were isolated acts initiated by the plaintiff himself, and the defendant sold no other dogs in Ohio, nor did it have any other business activities within this state.[38]

{¶ 37} In *Natl. Court Reporters*, the appellate court held that despite finding jurisdiction under the broadly-interpreted long-arm statute, the plaintiff failed to establish that the exercise of personal jurisdiction over the defendant comported with due process. The court held that although the defendant transacted business in Ohio, it did not have a substantial connection with this state.[39] The court noted that the Ohio corporation solicited the defendant's business via a website, and that site did not indicate or suggest in any way that the plaintiff was an Ohio company or that plaintiff's customers would be doing business in Ohio.[40] Furthermore, the court reporters provided were Maryland court reporters for a Maryland company.[41] The defendant's contacts with Ohio in that case were nonexistent apart from the telephone calls and emails procuring the deposition services and a one-time payment mailed to the plaintiff.[42]

{¶ 38} In *Epic Communications v. ANS Connect*, 8th Dist. No. 90364, 2008-Ohio-3548, 2008 WL 2766285, ¶ 2, the plaintiff, an Ohio consulting firm, contracted with the defendant, a Georgia company, to provide consulting services regarding federal programs providing grant money. The contract was negotiated via telephone, and the defendant was required to make payments to the plaintiff in

36. *EnQuip Technologies Group, Inc. v. Tycon Technoglass, S.R.L.*, 2d Dist. Nos. 2009–CA–42 and 2009–CA–47, 2010-Ohio-28, 2010 WL 53151, ¶ 75.

37. *Buflod*, 2007-Ohio-347, 2007 WL 210790, at ¶ 17–19.

38. Id. at ¶ 18.

39. *Natl. Court Reporters*, 2009-Ohio-2271, 2009 WL 1346641, ¶ 10.

40. Id. at ¶ 11.

41. Id.

42. Id. at ¶ 12.

Ohio.[43] The court found no minimum contacts sufficient to establish personal jurisdiction, noting that the plaintiff had solicited business from the defendant, who was located in Georgia.[44] The court emphasized that the actions of the defendant determine whether there is a substantial connection with the forum state, and it found insufficient actions on the part of the defendant to establish personal jurisdiction.[45]

{¶ 39} Because TQL's services are rare, it is helpful to look at case law outside the state of Ohio for decisions involving similar facts.

{¶ 40} In *Bitterroot Internatl. Sys., Ltd. v. W. Star Trucks, Inc.*, 336 Mont. 145, 2007 MT 48, 153 P.3d 627, ¶ 7–8, Bitterroot provided freight hauling and trucking logistics services for Western. Bitterroot, a Canadian corporation, was based in Montana; Western was a Canadian corporation with no offices in Montana.[46] While no formal written contract was signed by the two parties, Bitterroot provided trucking logistics services to Western under an informal agreement.[47] The court held that Western had purposely availed itself of the privileges of conducting business in Montana by "(1) hiring Bitterroot—a Montana based company—to haul its freight and perform logistics services, (2) making payments to Bitterroot in [Montana], (3) hosting a Bitterroot employee at Western's headquarters who was paid by Bitterroot out of [Montana], and (4) communicating daily to and from Bitterroot's headquarters in [Montana] via telephone, fax, and the specially installed "data line," pursuant to the [informal agreement]."[48] Based on these facts, the court concluded that personal jurisdiction over Western was reasonable and did not offend traditional notions of fair play and substantial justice as embodied in the Due Process Clause.[49]

{¶ 41} In *M–R Logistics, L.L.C. v. Riverside Rail, L.L.C.* (D.Mass.2008), 537 F.Supp.2d 269, 272, M–R Logistics, a Massachusetts company, provided rail cars to Riverside Rail, a New Jersey company that transports construction and demolition debris. Under the contract between the parties, M–R Logistics provided empty rail cars to a Riverside transfer station in New Jersey; none of

---

43. Id. at ¶ 7.

44. Id. at ¶ 12.

45. Id.

46. *Bitterroot* at ¶ 7.

47. Id. at ¶ 8–10.

48. Id. at ¶ 28.

49. Id. at ¶ 29.

the rail cars ever entered Massachusetts.[50] Per the terms of the contract, Riverside telephonically or electronically contacted M–R Logistics several times a day on a daily basis for approximately two years.[51] The court found that these extensive postcontract communications, along with the fact that the contract contained a choice-of-law provision dictating that Massachusetts law governed the contract between the parties, eliminated any element of surprise or involuntariness of being haled into court in Massachusetts.[52] The court concluded that personal jurisdiction in Massachusetts did not violate due process.[53]

{¶ 42} The companies at issue in *Bitterroot* and *M–R Logistics* had more contact with the forum states than Best Plastics did in the case at bar. Specifically, in *Bitterroot*, Bitterroot actually hauled the freight, in addition to providing logistics services, and a Bitterroot employee was placed at Western's headquarters. In *M–R Logistics*, again the company actually provided the actual transportation cars, as opposed to only brokering the loads, and the communications between the two companies occurred on a daily basis for two years. In the case at bar, TQL found trucks to transport shipments for Best Plastics, but there is no evidence that TQL actually owned those trucks or that any trucks it owned performed shipping services for Best Plastics. Best Plastics did contact TQL 95 times over a four-month period; however, this is less than multiple daily contacts for two years. Nevertheless, the analysis set forth in these cases is helpful to the court's analysis in the case at bar.

{¶ 43} In the present case, it was TQL that solicited business from Best Plastics, a New Jersey company with operations located in Georgia, which does not ship its products to Ohio for sale. However, it was Best Plastics that opened a line of credit with TQL and proceeded to place 95 "orders" for TQL's brokerage services on that line of credit. The question is whether this action on the part of Best Plastics constitutes a purposeful availment of the privilege of acting in Ohio that invokes the benefits and protections of the laws of this state.[54] The court finds that it does. The service being provided to Best Plastics by TQL was the logistics service of finding a truck to ship Best Plastics' goods. The TQL brokers who found trucks for Best Plastics were located in Ohio and performed that service in this state. Best Plastics is correct that the actual shipments that TQL

---

**50.** M–R Logistics, L.L.C., at 273.

**51.** Id. at 278.

**52.** Id.

**53.** Id. at 277–279.

**54.** See, e.g., *Calphalon Corp. v. Rowlette* (C.A.6, 2000), 228 F.3d 718, 721–722.

was brokering were not made to or from Ohio. However, Best Plastics repeatedly contacted TQL over a period of several months to request TQL's brokerage services. Regardless of where the actual shipments were going to and from, those brokerage services were provided in Ohio to Best Plastics in New Jersey and Georgia. Best Plastics made repeated telephone calls and email communications with an Ohio company to obtain that company's services. Additionally, the defendant was required to remit payment to TQL in Ohio, which it did on five occasions.

{¶ 44} It is true that traditionally, telephone and email contact alone is not always considered sufficient to support a finding of minimum contacts and purposeful availment. However, what is important to note is that the only contact Best Plastics could have had with TQL was via telephone, email, and facsimile because of the nature of TQL's business. TQL provides a service to its customers who contact them by telephonic or electronic means to find an available truck to ship their product loads. If TQL manufactured widgets and Best Plastics contacted them to purchase those widgets, the court doubts that the defendant would have bothered to raise a personal-jurisdiction argument. It is not equitable or logical to distinguish between a company providing a service that it performs in Ohio on behalf of a foreign company and a company that manufactures a tangible good in this state that it ships to a foreign company. TQL provided a service for Best Plastics at the defendant's request, that service was provided to Best Plastics by TQL, and it was performed by TQL employees in Ohio.

{¶ 45} It was the choice of Best Plastics to utilize TQL's logistics-brokerage services. If Best Plastics wishes only to be haled into court in the states that it ships its products to and from, then it should not hire a "middle-man" logistics company to perform a service on its behalf in another state. The fact remains that Best Plastics deliberately and purposely made numerous contacts with TQL to request that TQL provide a service for it, and that service was done in the state of Ohio.

{¶ 46} The court finds that these facts support a finding that Best Plastics purposely availed itself of the privilege of conducting activities in Ohio. It was the actions of Best Plastics, namely contacting TQL on 95 occasions to request that it perform brokerage services for Best Plastics in Ohio, that support a finding that jurisdiction is proper. Furthermore, TQL's claims in the case at bar arise out of those activities that were directed at this state; specifically, TQL is claiming that Best Plastics has refused to pay for the services it requested that TQL perform, and those services were provided in Ohio. Finally, the substantial contacts between Best Plastics and TQL that were directed to Ohio are sufficient to make the exercise of jurisdiction over Best Plastics reasonable, and the court finds that

the exercise of jurisdiction over Best Plastics in Ohio does not offend traditional notions of fair play and substantial justice as embodied in the Due Process Clause.

## CONCLUSION

{¶ 47} Based on the above analysis, the defendant's motion to dismiss pursuant to Civ.R. 12(B)(2) for lack of personal jurisdiction is not well taken and is hereby denied.

So ordered.